[Civ. No. 2999. Third Appellate District.—January 21, 1926.]

## J. B. COLT COMPANY (a Corporation), Appellant, v. J. I. FREITAS, Respondent.

[1] FRAUD—SALE OF CARBIDE PLANT—ACTION ON PROMISSORY NOTE—ECONOMICAL CHARACTER OF PLANT — REPRESENTATIONS TO OTHER PURCHASERS—EVIDENCE.—In an action upon a promissory note which defendant claimed he was induced to give to plaintiff in the purchase by the former of a carbide plant upon the false representation of plaintiff's salesman that the plant would be more economical for heating, cooking, and laundrying than a wood-stove burning wood at a cost not to exceed two dollars a cord, the trial court should have overruled plaintiff's objection to a question asked another purchaser of a similar plant, namely, if the selling agent represented to him that the operation of the plant for heating and cooking was. cheaper than wood at two dollars a cord.

[2] ID.—REPRESENTATIONS—STIPULATION IN CONTRACT—ESTOPPEL.—In such action, the stipulation in the contract of the parties that the instrument "covers all of the agreements between the purchaser and the company, and that no agent or representative of the company has made any statements, representations or agreements, verbal or written, modifying or adding to the terms and conditions herein set forth," did not preclude the defendant from proving false representations which induced him to enter into the contract and without which it would not have been executed by him.

[3] ID. — REPRESENTATIONS — WARRANTY — CONTRACTS. — There is a definite distinction between a fraudulent representation and a warranty. A fraudulent representation is an antecedent statement made as an inducement to the contract, but is not a part or element of the contract.

[4] ID. — ECONOMICAL CHARACTER OF PLANT — REPRESENTATION AS TO EXISTING FACT—EVIDENCE.—In such action, the statement that the operation of the plant was more economical for cooking and heating then the use of wood at two dollars a cord was as to an existing fact, a quality of the plant, and not the expression of a mere opinion, where it was made by the agent, who presumably knew the cost of operating the plant, to the defendant, who was without knowledge thereof, and the statement was made for the purpose of inducing the defendant to make the purchase.

1. Proof of other frauds, note, 4 L. R. A. 833. See 12 Cal. Jur. 831; 12 R. C. L. 435.

2. See 12 Cal. Jur. 823.

3. See 22 Cal. Jur. 960.

[5] Id.—Expression of Opinion—Statement of Fact—Evidence.—
What amounts to an expression of an opinion as compared with
a positive statement of fact depends upon all the circumstances
of the case.

[6] Id. — Possession of Superior Knowledge or Information —
Representations.—When one of the parties possesses, or assumes
to possess, superior knowledge or special information regarding the
subject matter of the representation, and the other party is so
situated that he may reasonably rely upon such supposed superior
knowledge or special information, a representation may by the
party possessing or assuming to possess such knowledge or in-
formation, though it might be regarded as but the expression of
an opinion if made by any other person, is not excused if it be
false.

[7] Id.—Contracts—Election—Evidence.—In such action, the facts
in evidence do not show that defendant elected to treat the con-
tract as valid.

[8] Id.—Election of Remedies—Estoppel.—The doctrine of election of
remedies is based upon estoppel, and where fraud exists, there is
not the same reason for applying a rigid rule of estoppel as in
other cases.

[9] Id.—Damages—Evidence.—In such action, it was not necessary for
the defendant to prove that the property purchased was of no
value or that it was worth less than the amount he agreed to pay
for it; and the fact that the property is actually worth what he
gave for it does not preclude him from obtaining relief on the
ground that the sale was induced by false representations, if it
would have been worth still more had the representations been
true.

[10] Id.—Exact Amount of Damages—Evidence.—In such action, the
exact amount of damages suffered by defendant need not be shown,
provided it be in an appreciable sum.

[11] Id.—Fraud as Defense—Statute of Limitations—Laches.—
Where fraud is relied upon as a defense merely, neither the limita-
tion of the statute nor the doctrine of laches would operate to
bar the defense of the invalidity of the agreement upon the ground
of fraud, for so long as the plaintiff is permitted to come into
court seeking to enforce the agreement, the defendant may allege
and prove fraud as a defense. In short, it is not incumbent upon

5.  See 12 Cal. Jur. 729; 12 R. C. L. 247.

6.  See 12 Cal. Jur. 727.

8.  See 12 Cal. Jur. 787.

9.  See 12 R. C. L. 393.

11.  See 16 Cal. Jur. 486.

one who has thus been defrauded to go into court and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud.

[12] ID.—RESCISSION.—In such action, where no affirmative relief was sought it was not necessary for defendant to have exercised an existing right to rescind.

[13] ID.—REMEDIES.—There are three methods by which, in cases like the present, a party defrauded may obtain relief: 1. Cancellation or rescission, etc.; 2. Affirmative relief by an action to recover compensation for the injury sustained by the fraud; 3. Defensive relief, whereby the fraud is set up by way of defense to defeat an action brought to enforce an apparent obligation or liability.

---

(1) 22 **C. J.**, p. 176, n. 79, p. 747, n. 58; 27 **C. J.**, p. 60, n. 66. (2) 22 **C. J.**, p. 1215, n. 65, p. 1217, n. 66, p. 1218, n. 83; 35 **Cyc.**, p. 569, n. 24.　(3) 35 **Cyc.**, p. 368, n. 3, 4.　(4) 26 **C. J.**, p. 1082, n. 89, 3.　(5) 26 **C. J.**, p. 1083, n. 12.　(6) 26 **C. J.**, p. 1085, n. 22, 24, 25, p. 1087, n. 41.　(7) 35 **Cyc.**, p. 539, n. 60.　(8) 20 **C. J.**, p. 4, n. 10, p. 35, n. 30.　(9, 10) 35 **Cyc.**, p. 67, n. 32, p. 573, n. 75. (11) 13 **C. J.**, p. 396, n. 28; 37 **C. J.**, p. 803, n. 55.　(12) 35 **Cyc.**, p. 539, n. 60.　(13) 13 **C. J.**, p. 395, n. 23, p. 611, n. 95, 3.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

Cook & Nichols for Appellant.

F. W. Henderson for Respondent.

FINCH, P. J.—The plaintiff sued to recover the amount of a promissory note, dated May 29, 1922, alleged to be due from defendant. The note was given by defendant in consideration of the purchase by him from plaintiff of a carbide generator and equipment. The answer alleges in the usual form that the defendant was induced to make the purchase by plaintiff's false and fraudulent representations. The representations alleged to be false are: "That on or about the 22nd day of May, 1922, plaintiff offered to sell to defendant one carbide generator with fixtures and one stove with pipes and fittings for the sum of $388.10, and stated

12.　See 12 Cal. Jur. 786.
13.　See 12 Cal. Jur. 781.

and represented to defendant that the said generator and equipment mentioned above would be and were more economical for heating, cooking and laundrying than a wood stove burning wood at a cost not to exceed $2.00 a cord; that the generator and equipment worked automatically, required only slight attention, that 400 pounds of carbide, which would make two fillings of the generator, a year would be all that would be required for the operation of the equipment; . . . that if he would pay for installing said generator and equipment and give it his note for $388.10 payable in one year, that it would supply the generator and equipment and install the same on trial and if the same did not prove satisfactory it would take it out, cancel his note and that he would be under no further obligation to it.'' The case was tried before a jury, which returned a verdict in favor of defendant and he was given judgment for his costs of suit. The plaintiff has appealed from the judgment.

The sale of the plant to defendant was negotiated by a salesman of the plaintiff. The contract provided: ''This order shall become a contract between the purchaser and the company upon acceptance thereof in the space below by an officer or credit manager of said company.'' It was subsequently signed by ''C. C. Shepley, credit manager,'' and the plant was thereafter installed. The contract contained the following provisions: ''Warranty: It is agreed that in accepting this order the company warrants the apparatus furnished to be automatic in action, and of good material and workmanship, and that it is on the permitted list of the National Board of Underwriters. . . . It being understood that this instrument, upon such acceptance, covers all of the agreements between the purchaser and the company, and that no agent or representative of the company has made any statements, representations or agreements verbal or written, modifying or adding to the terms and conditions herein set forth.''

[1] The defendant and his wife both testified that the plaintiff's salesman made the alleged representations. The plaintiff sold and installed several other plants of the same kind in the defendant's neighborhood during the year 1922. Three of such purchasers testified at the trial. One of them testified that something was said to him by the selling agent ''about it being cheaper to operate than wood on a basis

of $2 a cord." On objection of counsel for the plaintiff, the witness was not asked anything further as to any representations made to him by the agent. Another purchaser was asked if the agent represented to him that the operation of the plant for heating and cooking was cheaper than wood at two dollars a cord. The court sustained plaintiff's objection to the question. The objection should have been overruled. (12 Cal. Jur. 831; *Thompson* v. *Modern School, etc.,* 183 Cal. 112, 121 [190 Pac. 451]; *Kornblum* v. *Arthurs,* 154 Cal. 246, 248 [97 Pac. 420]; *Bone* v. *Hayes,* 154 Cal. 759, 767 [99 Pac. 172].) A third purchaser testified that the agent who sold him a plant said that it would cost less to operate than wood at two dollars a cord. On motion of plaintiff the answer was stricken out. On cross-examination, however, counsel for plaintiff brought out the fact that the agent made the representation. In order to save time, it was stipulated that a fourth purchaser, if called as a witness, would testify "substantially to the same effect" as the third, subject to the same objection that had been made to the introduction of such testimony. These witnesses testified that the cost of operating the plant was from six to ten times as much as the cost of wood for the same purpose at two dollars a cord. The testimony as to the making of this representation to the defendant, as well as to the other purchasers, and as to its falsity stands uncontradicted. For the purposes of this opinion, it may be conceded that the other alleged representations are, some of them, mere expressions of opinion; others, in the nature of warranties not included in the written agreement; or that the evidence fails to show that the same were substantially false; or that they were a part of the oral negotiations which were not embodied in the written contract.

The defendant testified that he knew nothing about carbide plants at the time of the purchase except what the agent told him; that he believed the representations made by the agent and was induced thereby to make the purchase; that after about fifteen days' use of the plant he had trouble with it; that about a month or a month and a half after the plant was installed, a representative of the plaintiff inspected it; that he told this representative that "that thing would bust a man up in business to operate it"; that the representative did some work upon it, but no improvement

resulted therefrom; that "not very long" thereafter another representative was there "looking over" the plant; that he made a similar complaint to this second representative; that defendant could not operate the plant and ceased to use it about two and a half months after it was installed; that thereafter a third man connected with the company appeared and tested the pipes. About June 18, 1923, the plaintiff's credit and collection manager called upon defendant. The former testified that the defendant complained about the plant; that witness told defendant he would send a man to make adjustments and that in the following July he did send a man to make "repairs or adjustments on the plant"; and that the plaintiff later sent defendant "a hopper and a bell for his plant, and he later on . . . refused to remove it from the depot." Another representative of the plaintiff testified that in the late spring of 1924 he went to the defendant's home "to make an adjustment on his plant and replace any defective parts, if there was any"; that "I asked him about a settlement and we did not seem to get together, as far as a settlement was concerned, and Mr. Freitas said that if we would ship him a gas bell and a hopper, as was recommended, he would put it in operation and settle for his plant." Relative to such hopper and bell, the defendant testified: "They was to send me a hopper and bell, but it was a different kind, a late improvement, and when it came here it was not what they was to send; I found out it was the same kind I had, so I did not take it, that was the reason. . . . It was to be a different kind of a hopper, it would be a later model." The defendant further testified that he did not promise to pay for the plant if plaintiff would send another hopper and bell.

On June 28, 1923, the defendant wrote the plaintiff: "The expense of operating it (the plant) is so great that I have had to discontinue its use entirely. I was given to understand that it was cheaper to operate than operation with wood at $2.00 a cord and further that the plant would require only occasional attention, whereas in fact unless it is watched constantly I can get no service from it. Besides the agent told me that I was to have the plant on trial for one year and if the same was not satisfactory it could be returned. If you will tell me what to do with it and where

to ship it I will send it back to you. As it is the plant is of no value to me.'' In reply to this letter the plaintiff wrote defendant, under date of July 6, 1923, in part as follows: ''We note your remarks as to the many promises which you claim our saleman made to you at the time of purchase, but as the writer explained to you personally, our only guarantee is that the plant be automatic in action and of good material and workmanship. . . . Relative to the trouble which you are experiencing with your plant. We are referring this matter to Mr. Fears, 105 Bacon Bldg., Oakland, our California State Manager and requesting him to give it his immediate attention, having utility man call and make any adjustments which may be necessary.'' July 17, 1923, defendant's attorney wrote the plaintiff that the defendant would crate the plant and put it on board the cars at Merced subject to plaintiff's shipping instructions, but that the defendant would not pay any part of the purchase price or of the promissory note. July 24, 1923, the plaintiff wrote defendant's attorney stating, among other things: ''We are willing to make any adjustments to his plant which may be necessary, but we have absolutely no intention whatever of accepting the return of it.''

[2] The chief point upon which appellant relies for a reversal is that ''testimony cannot be admitted as to alleged prior misrepresentations where a proven written contract stipulates that none have been made other than those set forth in the written contract, and the party is not deceived as to the contents of the written contract.'' It is not stipulated in the contract that no representations other than those set forth in the contract were made, but only that no other representations were made ''*modifying or adding to the terms and conditions herein set forth.*'' If it be conceded that the stipulation precludes proof of an oral promise to let the defendant have the plant on trial for a year and of any oral warranty other than those specified in the written contract, it does not follow that the defendant is barred thereby from proving false representations which induced him to enter into the contract and without which it would not have been executed by him. [3] ''There is a definite distinction between a fraudulent representation and a warranty. A fraudulent representation is an antecedent statement made as an inducement to the contract, but is not

a part or element of the contract." (*Griswold* v. *Morrison,* 53 Cal. App. 93, 99 [200 Pac. 62].)   Appellant relies upon the case of *Munn* v. *Earl C. Anthony, Inc.,* 36 Cal. App. 312 [171 Pac. 1082], where a somewhat similar stipulation was held to be a waiver of the right to prove that the execution of the contract there in question was induced by false representations.   In *Mooney* v. *Cyriacks,* 185 Cal. 70, 82 [195 Pac. 922], it is said that the decision in the Munn case "is opposed to the authorities we have cited and hence cannot be followed."   The stipulation in the contract considered in the Mooney case was much more comprehensive than that here under consideration.   It provided: "It is expressly understood and agreed that no statements, agreements, understandings or representations of any kind or nature, have been made, or exist, other than those in this agreement contained."   Appellant there contended that "the writing itself is the only admissible evidence upon the issue of fraud."   The court said: "The contention ignores the well established rule of law that 'Parol evidence is always admissible to prove fraud,' " citing Berry on Automobiles, section 814, and many other authorities.   (See, also, *Whiting* v. *Squeglia,* 70 Cal. App. 108 [232 Pac. 986].)   In view of the foregoing decisions, it is deemed unnecessary to consider the cases cited from other jurisdictions.

[4]   The statement that the operation of the plant was more economical for cooking and heating than the use of wood at two dollars a cord was not the mere expression of an opinion.   It was made by the agent, who presumably knew the cost of operating the plant, to the defendant, who was without knowledge thereof.   It is clear that the statement was made for the purpose of inducing the defendant to make the purchase.   The form of expression used is immaterial.   The agent must have intended and the defendant doubtless understood the statement to relate to an important quality of the plant,—that of economy in operation.   That seems to have been the agent's chief selling point.   The defendant had the right to believe that the agent's statement was based upon his knowledge and experience.   Under the circumstances shown by the evidence, the statement was as to an existing fact, a quality of the plant, and not the expression of a mere opinion.   [5]   "What amounts to an

expression of opinion as compared with a positive statement of fact depends upon all the circumstances of the case." (*French* v. *Freeman,* 191 Cal. 579, 585 [217 Pac. 515]. See, also, *Harris* v. *Miller,* 196 Cal. 8 [235 Pac. 981, 984] ; *Herdan* v. *Hanson,* 182 Cal. 538, 546 [189 Pac. 440] ; *Tracy* v. *Smith,* 175 Cal. 161, 165 [165 Pac. 535].) **[6]** "When one of the parties possesses, or assumes to possess, superior knowledge or special information regarding the subject matter of the representation, and the other party is so situated that he may reasonably rely upon such supposed superior knowledge or special information, a representation made by the party possessing or assuming to possess such knowledge or information, though it might be regarded as but the expression of an opinion if made by any other person, is not excused if it be false." (*Haserot* v. *Keller,* 67 Cal. App. 659, 670 [228 Pac. 383, 388].)

Appellant says that "after the defrauded party, with knowledge of the facts has elected to treat the contract as valid he cannot change his position and assert it is invalid." **[7]** But the facts in evidence do not show that defendant elected to treat the contract as valid. For more than a year after the plant was installed the plaintiff made repairs and adjustments in an effort to overcome the defects of which defendant complained. Its efforts were continued even after receipt of defendant's letter of June 28, 1923, and that of his attorney of July 17, 1923, in which defendant refused to pay for the plant and offered to return it to plaintiff. **[8]** "The doctrine of election of remedies is based upon estoppel, and it is therefore apparent that where fraud exists, there is not the same reason for applying a rigid rule of estoppel as in other cases." (12 Cal. Jur. 787.)

**[9]** It is contended that the defendant did not prove damages or that he had rescinded the contract and that the evidence shows that he was guilty of laches. It was not necessary for the defendant to prove that the property purchased was of no value or that it was worth less than the amount he agreed to pay for it. "Property purchased need not be entirely worthless in order to entitle one defrauded into purchasing it to hold the seller liable for the loss thereby inflicted upon him. . . . The fact that the property is actually worth what the vendee gave for it does not pre-

clude him from obtaining relief on the ground that the sale was induced by false representations made by the vendor, if it would have been worth still more had the representations been true." (12 R. C. L. 393.) **[10]** "The exact amount of damages need not be shown, provided it be in an 'appreciable' sum." (*Munson* v. *Fishburn*, 183 Cal. 206, 219 [190 Pac. 808].) **[11]** Where fraud is relied upon as a defense merely "neither the limitation of the statute nor the doctrine of laches will operate to bar the defense of the invalidity of the agreement upon the ground of fraud, for so long as the plaintiff is permitted to come into court seeking to enforce the agreement, the defendant may allege and prove fraud as a defense. In short, it is not incumbent upon one who has thus been defrauded to go into court, and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud." (*Estate of Cover*, 188 Cal. 133, 140 [204 Pac. 583, 587].) **[12]** "Where no affirmative relief is sought, it is not necessary for him to have exercised an existing right to rescind." (12 Cal. Jur. 786; *Simon Newman Co.* v. *Lassing*, 141 Cal. 174 [74 Pac. 761].) **[13]** "There are three methods by which, in cases like the present, a party defrauded may obtain relief: 1. Cancellation or rescission, etc.; . . . 2. Affirmative relief by an action to recover compensation for the injury sustained by the fraud; . . . 3. Defensive relief, whereby the fraud is set up by way of defense to defeat an action brought to enforce an apparent obligation or liability." (*Toby* v. *Oregon Pacific R. R. Co.*, 98 Cal. 490, 498 [33 Pac. 550, 553]; *Field* v. *Austin*, 131 Cal. 379, 382 [63 Pac. 692].)

Appellant complains of the court's refusal to give an instruction to the effect that the stipulations of the contract precluded proof of false representations. The contention is disposed of by what has already been said. Appellant sets out four instructions given by the court and states that "the giving of these instructions by the court is assigned as error." No attempt is made to point out wherein any of the instructions are erroneous and no statement of law therein appears to be unfavorable to appellant. The other alleged errors which are not covered by the foregoing discussion are of minor importance and need not be separately

considered. It is sufficient to say that appellant's contentions relative thereto are without substantial merit.

The judgment is affirmed.

Plummer, J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 20, 1926, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 22, 1926.