[Civ. No. 7216. First Appellate District, Division Two.—July 28, 1930.]

CORNELL TRACTOR COMPANY (a Corporation), Appellant, v. C. F. HUMPHREY et al., Respondents.

C. W. Davidson, Charles F. Harding, Franklin Swart and William H. Johnson for Appellant.

Ross & Ross and Luther Elkins for Respondents.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to recover a judgment for the price of a harvester sold and delivered. The defendants answered the complaint and they also filed a cross-complaint. The cross-complaint was answered and the issues so made were tried before the court sitting without a jury. The court made findings in favor of the defendants and from a judgment entered thereon the defendants have appealed.

No demurrer was interposed and there was no motion to strike out. However, as we understand the plaintiff, it claims that the alleged misrepresentations were not as to material matters, that they were not false, and that the case as made by the defendants did not entitle them to any relief.

The defendants were engaged in farming 1,000 acres of grain in the neighborhood of Pescadero. Because of the prevalence of fog in that neighborhood, during the summertime, harvesting is at all times a serious problem. In the

spring of 1928 Mr. Cornell, the president of the plaintiff corporation, went to Pescadero and commenced the negotiations to sell to the defendants a harvester. He was taken over the ground, the conditions were explained to him, and he was told the wants of the defendants. He stated to them that their Holt Harvester Model 32 would do the work of the defendants satisfactorily, and that it would thresh 600 to 800 sacks per day. They acted on his representations and ordered a machine. That particular machine is constructed on peculiar lines. If we understand the record correctly, there are two separate operations. The first one cuts the grain and lets it fall in windrows. The second operation picks it up, threshes it, and drops the filled sacks. The threshing commenced in June. The plaintiff sent an experienced representative to operate the machine, but from the very beginning much trouble was experienced. The principal trouble consisted in the failure of the machine to pick up the cut grain, also of its failure completely to separate the straw from the grain. The result was, according to the testimony of the defendants, a large portion of their grain was left in the field, much of it was discolored because of the long time it was left exposed to the fog, and the portion that was harvested contained straw and other foul stuff, which reduced its value. The machine did not harvest but 270 sacks per day, whereas it was represented that it would harvest 800 sacks per day. It cost more per acre to harvest than did the old method. The trial court found that the representations alleged in the cross-complaint were made and it also found that they were false. It requires no citation of authority to the effect that the alleged misrepresentations were actionable.

As to the damage the plaintiff asserts that the case, as made, was confined to loss of crop and loss in value per sack. In this connection the defendants assert that there was also involved the element of excessive cost of threshing. During the trial evidence was introduced on each of these matters. There was evidence that the damage amounted to as much as $8,000. By no means can it be said that the judgment for $3,500 was excessive.

When Mr. Steel, an experienced farmer, was on the stand he was asked, "Could you give us an estimate of

what the crop should have yielded as it was growing, prior to being threshed?" Over the objection of the plaintiff he answered, "15 or 20 sacks." At another time he was asked, "Mr. Steel, after you had started the threshing with this combined harvester and ran into the difficulty that you have referred to, was it necessary for you to continue using that machine?" Over the objection of the plaintiff he was allowed to answer. His answer was, "Yes. because after it is cut in windrows you cannot handle it any other way. Under the old method with a stationary thresher you do not cut and leave it out in windrows. After the grain is once cut and left in windrows it can never be bound and there is no way of using the old method." Neither of these rulings was erroneous, but each was clearly correct.

In using the plaintiff's machine it was necessary to follow the machine with pitchforks and assist in cleaning up. Instead of cutting the grain on the ranch of the defendants in fifteen days, the harvesting took sixty days. For the purpose of showing to what extent the new method was more expensive than the old method and in this manner showing one element of the damage suffered by the defendants they introduced evidence concerning the respective costs. The plaintiff asserts that such evidence was not stated positively. Conceding that it was not, its weight was a question for the trier of the facts and not for a court of review.

The plaintiff contends that the defendants did not rescind. They were not bound to do so. They had three remedies, and one of those remedies was to sue for affirmative relief for injury sustained by the alleged fraud. (*J. B. Colt Co.* v. *Freitas,* 76 Cal. App. 287 [244 Pac. 916].) In this same connection the plaintiff asserts that the defendants did not object to the manner in which the machine worked. This point is not sustained by the record.

When the defendants had finished their crop they loaned the machine to a neighbor, who made some use of it. All of the facts were developed before the trial court and we must assume that the trial court gave them due consideration in determining the issues. The mere loaning of the machine did not constitute an estoppel, and,

as the facts were not pleaded, it did not constitute a defense or counterclaim to the cross-complaint.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 27, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 25, 1930.