[14225, 14979. Department Two.—June 9, 1893.]

## SIMEON B. TOBY, RESPONDENT, v. THE OREGON PACIFIC RAILROAD COMPANY ET AL., APPELLANTS.

FORECLOSURE OF MORTGAGE UPON STEAMSHIP — JURISDICTION — SALE BY RECEIVER PENDENTE LITE — PERISHABLE PROPERTY — APPLICATION OF PROCEEDS — JUDGMENT FOR DEFICIENCY. — In an action to foreclose a mortgage upon a steamship, the court has jurisdiction to appoint a receiver *pendente lite*, and upon a showing after trial and order for judgment, but before entry of decree, that the steamship is deteriorating in value, and that large expense is being incurred in maintenance and repairs, has jurisdiction to order the receiver to sell it at public auction, as perishable property, and after confirmation of such sale to enter a decree reciting the facts, awarding judgment for the amount of the debt and interest, requiring the receiver to pay the amount in his hands upon such judgment to the plaintiff, and awarding execution for the balance; and the application of the proceeds of such sale, to the extinguishment of the amount of such judgment, is such an ascertainment of the balance as warranted the court in awarding personal judgment against the mortgagor and execution for the deficiency without the necessity that a sale should take place under a decree of foreclosure.

ID. — CONSTRUCTION OF CODE — OBJECT OF PROVISION REQUIRING FORECLOSURE — MODE OF ASCERTAINMENT OF DEFICIENCY NOT ESSENTIAL. — The object of section 726 of the Code of Civil Procedure, in regard to the foreclosure of mortgages upon real or personal property, is to inhibit a personal action to recover a debt secured by mortgage; to confine a recovery in such cases to one action; to make the mortgaged property the primary fund out of which satisfaction is to be had, and to give the plaintiff a personal judgment for such balance as may be found due after the exhaustion of the mortgaged property; but it is not necessary to give effect to the evident intent of the law-makers, that there can be no deficiency judgment without a sale under a decree of foreclosure and a formal return by the sheriff, but whenever an application of the primary fund and a deficit remaining exist, and can only be reasonably ascertained by other means, these facts are not to be ignored because made apparent in a different way.

ID. — ASSIGNMENT OF NOTES AND MORTGAGE FOR COLLECTION — WANT OF CONSIDERATION — ACTION FOR BENEFIT OF ASSIGNOR — LEGAL TITLE OF ASSIGNEE — RIGHT OF ACTION. — Where the pleadings admit that the legal title to the notes and mortgage sued upon is in the plaintiff, and the answer takes issue upon plaintiff's ownership for value, and avers that he holds them for collection without consideration, and is prosecuting the action as the agent of the real owner, and for his use and benefit, a finding for the defendant upon such issue does not impair the validity of plaintiff's title, except as against his assignor, or go to his right to maintain the action in his own name.

ID. — TRUSTEE FOR COLLECTION MAY SUE IN HIS OWN NAME — DEFENSE AGAINST BENEFICIARY. — A trustee to whom a chose in action has been transferred for collection, is, in contemplation of law, so far the owner that he may sue on it in his own name, though in such a case the defendant may urge any defense which he could have interposed against the beneficiary had the suit been brought in his name, and may prove the trust for collection as relevant to such defense, but such proof does not touch the abstract right of plaintiff to sue in his own name.

ID. — CANCELLATION OF NOTES AND MORTGAGE — RESCISSION FOR FRAUD — FINDINGS AGAINST DEFENSE — PLEADING — RECOUPMENT — FAILURE OF CONSIDER-

ATION. —Where the mortgagor of a steamship in an action to foreclose the mortgage pleaded false and fraudulent representations upon the part of the mortgagee, in regard to the speed and capacity of the steamship upon sale thereof, and pleaded an offer to return the steamship upon discovery of the fraud, and a demand for a return of the notes and mortgage, and sought to have the notes and mortgage canceled, but did not set up the fraud by way of recoupment to reduce the amount of recovery, or plead a failure of consideration, and the finding of the court was against the defendants upon the issue of an offer to return the steamship, or to demand the return of the notes and mortgage, and that he had not ",rescinded the notes or mortgage, or the said sale of said steamship," and the findings support a judgment for the plaintiff, and there is no evidence in the record upon appeal from the judgment to show any specific damage, or that defendants offered to amend the pleadings so as to permit a defense of recoupment or failure of consideration, the judgment must be affirmed upon appeal.

ID. — DILIGENCE REQUIRED UPON RESCISSION FOR FRAUD — ABILITY TO RESTORE PROPERTY SOLD. — He who would rescind a sale for fraud must act diligently upon discovering the fraud, and must show himself not only willing but able to return the property received by him.

ID. — CONSTRUCTION OF CODE — RIGHT OF RESCISSION NOT ENLARGED. — Sections 3406 and 3408 of the Civil Code, authorizing courts to rescind contracts upon application of the party aggrieved, give no rights to the parties not accorded by courts of equity prior to their adoption.

ID. — EXHIBITS NOT ATTACHED TO DEPOSITION — IDENTIFICATION — PAROL EVIDENCE — OBJECTION UPON APPEAL. — Where exhibits referred to in a deposition are so marked as to be identified, and are returned with the deposition, the fact that they were not attached to the deposition is not made material by the code, which is silent upon the question. In the absence of a positive statute, exhibits properly identified need not be attached to a deposition, and if proven may be identified by parol. An objection that the exhibits were not sufficiently identified cannot be urged for the first time upon appeal.

ID. — EVIDENCE — CERTIFICATE OF ENGINEER — CROSS-EXAMINATION — HARMLESS RULING. — Where a mechanical engineer, employed as port engineer, testified for the defendant that he had regulated the quantity of coal taken on a steamship each trip, and identified a certificate as to the quantity of a kind of coal consumed ordinarily by the steamship upon its trip, and as to the relative quality of that and a different kind of coal, it cannot be an error prejudicial to the defendants, in whose favor a finding was made upon the question involved, to allow the plaintiff to offer such certificate in evidence while the witness was upon the stand for the purpose of contradicting his previous evidence as to the relative value of the two kinds of coal, though the contradiction was not material.

SEPARATE APPEALS from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*Milton Andros,* and *James L. Crittenden,* for Appellants.

*Page & Eells,* for Respondent.

SEARLS, C. — There are two separate appeals in this cause by the defendants, one from the final judgment, and the other

from an order denying a motion for a new trial. As they depend to some extent upon the same statement they will be considered together.

The action was brought to foreclose a mortgage upon the steamer Eastern Oregon, executed at the city of New York, by the Oregon Pacific Railroad Company, a corporation, on the tenth day of February, 1887, to the Florida Steamship Company, to secure the sum of $115,000, with interest at six per cent per annum, evidenced by twelve promissory notes of even date with the mortgage, eleven of which were for $10,000 each, and one for $5,000, and all payable twelve months after date. The Oregon Development Company, a corporation, was made a party defendant, upon the averment that it had or claimed to have some interest in the steamship, etc. Both the defendants are corporations organized and existing under the laws of the state of Oregon. The steamship in question was purchased for the trade between San Francisco and Southern Oregon, was brought from New York to this coast, and was within the jurisdiction of the courts of this state. The complaint averred the mortgagor defendant to be insolvent, and a receiver was appointed February 17, 1888, who took possession of the steamship and continued in charge of her until sold, as hereinafter stated, on the twenty-sixth day of April, 1890, for the sum of $80,030. The cause was tried by the court without the intervention of a jury, and written findings filed April 11, 1890, in which, upon the facts as found, the court ordered judgment in favor of plaintiff for $115,000 and interest, and a decree of foreclosure and a sale of said steamship as prayed in the complaint. On the fourteenth day of April, 1890, plaintiff filed a petition and affidavit showing that the steamship was deteriorating in value; that the expense of her maintenance, repairs, taxes, etc., amounted to about $300 per month, etc., and asked that the receiver be authorized to sell her. Such proceedings were thereupon had that the steamship was by order of the court sold at public auction on the twenty-sixth day of April, 1890, subject to the confirmation of the court. The sale was confirmed by the court April 29, 1890. Thereafter, and on the twenty-second day of May, 1890, the court entered a decree in the cause in which, after reciting the filing of its findings and decision, recites that the

court had ordered the receiver to sell the mortgaged property at public auction, *pendente lite,* to prevent further deterioration in its value (the same being perishable), and to pay the expenses and disbursements of said receiver, etc. The decree further recites the sale for $80,030; the confirmation thereof, the settlement of the receiver's accounts, leaving a balance of $70,224.62 in his hands. The decree then proceeds to award judgment in favor of plaintiff and against the mortgagor defendant for $137,655 (being the amount of the principal of said promissory notes, $115,000, and interest due thereon) and costs of suit. The decree requires the receiver to pay the plaintiff the amount in his hands ($70,224.62) and awards execution in favor of plaintiff and against the defendant, the Oregon Pacific Railroad Company, for the balance remaining unpaid, after crediting the judgment as aforesaid.

The first point by appellant in the appeal from the judgment is that the court had no jurisdiction or authority to enter a personal judgment for a deficiency, until after a sale of the mortgaged property by the sheriff, and a sheriff's return showing a deficiency. This theory proceeds upon the basis that the mode of procedure, provided by section 726 of the Code of Civil Procedure is exclusive. That section is as follows: "There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter. In such action the court may, by its judgment, direct a sale of the encumbered property . . . . and the application of the proceeds of the sale to the payment of the costs of the court and the expenses of the sale, and the amount due to the plaintiff; and if it appears from the sheriff's return that the proceeds are insufficient, and a balance still remains due, judgment can then be docketed for such balance against the defendant," etc.

The contention is that a foreclosure and order of sale are essential to authorize the sheriff to sell, and a sale by him and a return showing a deficiency are prerequisite to a personal judgment; that it is the return of the sheriff showing a deficiency which operates to crystallize the personal liability of the mortgagor and to assess the amount for which the court is

authorized to decree that a personal judgment may be docketed. A glance at the law as it existed prior to the adoption of our statutes in relation to mortgages will tend to make manifest the evils sought to be obviated by those enactments. At common law a mortgage was regarded as a conveyance upon condition to become absolute upon non-performance of the condition. Upon such non-performance the courts of law held the estate to be vested in the mortgagee, and refused to recognize the right of redemption. They conceded the jurisdiction of courts of equity to grant relief from the forfeiture; but that was the extent of the mitigation permitted until the passage of the Judicature Act of 36 and 37 Vict., chapter 66, sections 24 and 25, which provides that when the rules of law and equity are in conflict, those of equity shall prevail in all the courts. In the United States there has been no uniform doctrine in respect to mortgages. A majority of the states adopted the English doctrine. In Delaware, Mississippi, and Missouri, the doctrine is that before default the title remains in the mortgagor, but passes to the mortgagee upon his taking possession after default, subject to be defeated upon payment of the debt. Another hardship upon the mortgagor needed a remedy. The mortgagee could bring an action at law to recover the mortgage debt, and although he obtained judgment and (where permitted so to do by law) imprisoned the mortgagor, it did not without payment impair his mortgage.

The first of the hardships indicated was remedied by section 744 of our Code of Civil Procedure, which provides that "a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the property without a foreclosure and sale."

The right to a personal action to recover a debt secured by mortgage is inhibited by section 726 of the Code of Civil Procedure, hereinbefore quoted. Under that section there can be but one action for the recovery of any debt, etc., which must be in accordance with the provisions of that chapter. It further provides that a personal judgment may be entered for a balance remaining due, if the proceeds of the encumbered property shall be insufficient, etc. To confine a recovery in such classes to one

action; to make the mortgaged property the primary fund out of which satisfaction is to be had, and to give the plaintiff a personal judgment for such balance as may remain due after the exhaustion of the mortgaged property, are the three essential things provided for.

The contention of appellant that there can be no deficiency judgment without a sale and formal return by the sheriff seems to me too technical to give effect to the evident intent of the lawmakers in many cases.   Suppose in the present case the steamship mortgaged had been lost by perils of the sea, *pendente lite*, would the plaintiff have been without remedy? or can it be claimed that the court would have been forced to the useless expedient of foreclosing the mortgage, ordering a sale, and awaiting the return of the sheriff, before a deficiency judgment could be docketed?   Would it not rather be said that the court having obtained jurisdiction of the parties and of the subject-matter would, under the rules of equity, proceed under the altered circumstances, and in view of the fact that the security was exhausted, to do justice by the entry of judgment for what would then become the deficiency, viz., the full amount due? Again, suppose the ship had been insured in favor of the plaintiff against the perils of the sea and lost, can it be doubted that the insurance money, if paid into court, could be applied to the satisfaction of the mortgage with a judgment over for the balance, if any, due?   I think not.   It is true the statute provides for docketing a personal judgment for the balance shown to be due by the return of the sheriff.   Doubtless this language is used because it is the usual manner by which the application of the primary fund and a deficit remaining is ascertained, but, after all, it is the existence of these facts which entitle the plaintiff to a personal judgment against the defendant, and where they exist and can only reasonably be ascertained by other means, they are not to be ignored because made apparent in a different way.

The court was authorized, in a proper case, to appoint a receiver of the mortgaged property. (Code Civ. Proc., sec. 564.)   That the court had jurisdiction of the subject-matter and was authorized to foreclose the mortgage will not be disputed.   Section 187 of our Code of Civil Procedure provides

for cases of this character. *It is as follows:* " Whenever juris-
diction is, by the constitution of this code, or by any other stat-
ute, conferred· on a court or judicial officer, all the means
necessary to carry it into effect are also given; and in the exer-
cise of this jurisdiction, if the course of proceeding be not
specifically pointed out by this code or statute, any suitable
process or mode of proceeding may be adopted which may
appear most conformable to the spirit of this code." The mode
of proceeding adopted by the court was a suitable one under
the circumstances. (*Mawson* v. *Mawson,* 50 Cal. 539.)

I am of opinion that a sale of the whole of the mortgaged
property under the interlocutory degree of the court, *pendente
lite,* by a receiver, and the application of the proceeds to the
extinguishment of the amount found due the plaintiff, was such
an ascertainment of the balance as warranted the court in
rendering judgment therefor. I have examined *Biddel* v.
*Brizzolara,* 64 Cal. 362, and *Brown* v. *Willis,* 67 Cal. 235, 236,
and find nothing in them in conflict within the views herein
expressed.

It is objected that the decision of the court called for the
entry of a decree of foreclosure. Subsequent to the decision,
and prior to the entry of the decree, the mortgaged property
had been sold by the receiver under order of the court. The
decree recites these facts which show the changed conditions
and rendered the decree of foreclosure and order of sale unneces-
sary. It dealt with the property in its altered form, as money,
and decreed that it be applied upon the amount found due.
If the court had a right at that stage of the proceedings to
order that property to be sold as perishable, it certainly pos-
sessed the power of applying the proceeds as would have been
done by the sheriff had the sale taken place under a final decree.

The second point made by appellant, that "the said judgment
is against law," is supported by the same argument made in
favor of the first point, and need not receive further elaboration.

The further objection that the judgment is not in accordance
with the findings, in which the difference is between the decision
ordering a decree of foreclosure and sale and the decree finally
entered, has also been referred to. It is also urged that the
plaintiff was not entitled to a judgment upon the findings, for

the reason that the plaintiff in his complaint avers that the Florida Steamship Company assigned to him the mortgage and twelve promissory notes, and that he is estopped to prove that he holds the notes or mortgage as a trustee.   The allegation of the complaint is "that on the twenty-seventh day of January, 1887, the said corporation, the Florida Steamship Company, assigned, transferred, and set over to this plaintiff the said mortgage and the said promissory notes thereby secured, and this plaintiff is now the holder of said notes and mortgage." Defendant does not deny in its answer that the notes and mortgage were assigned to the plaintiff or that he now holds them. It does aver that he is not a *bona fide* holder for a valuable consideration, and that he holds them for collection, without consideration, and as the agent of said steamship company, which is the real owner thereof, and that the action is prosecuted for the use and benefit of the steamship company.

It will be seen that the issue is not as to the fact of the transfer, but the character of it, which defendant attacks.   The court finds the plaintiff is not a *bona fide* holder in his own right, or for a valuable consideration, of the notes and mortgage, but that he holds the same for collection and as the trustee of the real owners, and that the action is being prosecuted by said plaintiff for the use and benefit of the real owners of said notes. The finding then proceeds to set out the real owners of the notes, who are parties other than the mortgagee and except the Quintard Iron Works, a copartnership owning two of the $10,000 notes, the owners are found to have taken the notes in the regular course of business before maturity, and for a valuable consideration, without notice, etc.

Now a trustee to whom a chose in action had been transferred for collection is, in contemplation of law, so far the owner that he may sue on it in his own name. (*Goodnow* v. *Litchfield*, 63 Iowa, 275; *Logan* v. *Cassell*, 88 Pa. St. 288; 32 Am. Rep. 453; Code Civ. Proc., sec. 369; *McPherson* v. *Weston*, 64 Cal. 275; *Wetmore* v. *San Francisco*, 44 Cal. 294; *Poorman* v. *D. O. Mills*, 35 Cal. 118; 95 Am. Dec. 90; *Wedderspoon* v. *Rogers*, 32 Cal. 569.)   In such a case the defendant may urge any defense which he could have interposed against the beneficiary had the suit been brought in his name.   That is what

the defendant sought to do in the case at bar, by averring the Florida Steamship Company to be the beneficiary and urging a defense against that company. Proof that such company was the beneficiary, or that other persons occupied that relation, was an element going to the defense, but not touching plaintiff's abstract right to maintain the action in his own name under the pleadings. The legal title to the notes and mortgage were admitted by the pleadings to be in plaintiff, and there is nothing in the findings or in the fact, that they were taken in trust for collection, which impairs the validity of such title, except as against it, and in plaintiff's hands defendants could, as before stated, urge any defense good against the beneficiaries. The finding of the court that the notes were transferred by the Florida Steamship Company at the dates specified, to the several parties designated, was simply another method of traversing the averment of defendant that the Florida Steamship Company was the holder and owner thereof, and that the action was prosecuted for its benefit.

The more serious question under this branch of the case relates to the right of the plaintiff to recover upon the two promissory notes of $10,000 each, held by the Quintard Iron Works. The Quintard Iron Works is a copartnership composed of Nicholas F. Palmer and George W. Quintard, the latter of whom at the time of the sale of the steamship and execution of the notes in suit, was an officer of the Florida Steamship Company, and made the false and fraudulent representations in regard to the speed, capacity, etc., of the steamship as found by the court. He stands charged with notice of the misrepresentations, and his copartnership is in no better position.

Upon the pleadings and findings can a recovery be had upon these two notes?

There are three methods by which in cases like the present a party defrauded may obtain relief: 1. Cancellation or rescission, whereby the defrauded party procures an instrument, obligation, or other matter affecting his rights and liabilities to be set aside and annulled and be restored to his original position. 2. Affirmative relief by an action to recover a pecuniary compensation for the injury sustained by the fraud of the defend-

ant, where no cancellation is necessary as to the basis of such recovery.    3.  Defensive relief, whereby the fraud is set up by way of defense to defeat an action brought to enforce an apparent obligation or liability.

Defendant pleaded an offer upon discovery of the fraud to return the steamship and a demand of the return to it of the notes and mortgage made by it, etc.    The finding of the court was against defendant on this issue.

There is nothing in the record to indicate that any attempt was made to set up a claim for damage by way of recoupment, to reduce the amount of the recovery.    The whole effort of defendant, so far as this record shows, was directed to a cancellation or rescission of the contract.    It had retained the consideration of the notes, viz., the steamship, and according to the finding had not offered to reconvey it, and had not "rescinded the notes or mortgage or the said sale of said steamship," and therefore failed in its defense.

The evidence is not before us on the appeal from the judgment, and there is nothing to show that any specific damage was established, or that defendant sought to amend its pleadings so as to permit such defense.    This court in the absence of such a showing can only *guess* how much the defendant was damaged by the fraud of the Florida Steamship Company.    In other words, there was no basis whatever established upon which a reduction can be had.    The notes were not void, but voidable, and as defendant elected to retain the consideration, and has not pleaded a failure of consideration, it must be held to pay the notes.    Sections 3406, 3407 and 3408 of the Civil Code, which provide for rescinding written contracts by the judgment of the court in any of the cases mentioned in section 1689, do not authorize a rescission where the party seeking it had not exercised reasonable diligence as provided in section 1691.

The findings support the judgment, and the appeal from such judgment should be affirmed.

Appeal from the order denying defendants' motion for a new trial.

The point is made that the twelfth finding of the court, to the effect that defendant never before the commencement of the

action demanded the return of the notes, mortgage, etc., and never offered to reconvey the steamship, etc., is not supported by the evidence, and is contrary thereto. The testimony upon the question solved by this finding was conflicting. T. E. Hagg, the president of the Oregon Pacific Railroad Company, testified that in New York City in June, July, and August, 1887, he had, as well as before that time he had had numerous conversations with Quintard, in some of which soon after the arrival of the steamship at San Francisco, he had called upon the latter (then president of the Florida Company) to take back the steamship, and that later on learning that Talmadge had become president of the Florida Company, he demanded of him, as president, the return of the notes and that the steamship be taken back. The reply of Talmadge was that Quintard had charge of the matter. Talmadge was not called on as a witness, and it is claimed by appellant that this testimony is not contradicted. It is true Talmadge was not called as a witness in rebuttal to contradict the statement, but his deposition had been previously taken in New York, and in it he says he became president of the Florida Company in July, 1887, and that he "never heard of any objection to the steamship by Colonel Hagg's company until they brought suit against the Florida Steamship Company," and again, "I never heard or knew of any proposition to return the ship to the Florida Steamship Company on any terms." This testimony is emphatic, and negatives the statement of the witness Hagg. This witness was contradicted by other witnesses in important particulars relating to the same subject. The steamship had been chartered by the Oregon Pacific Railroad Company before she left New York, to the Oregon Development Company, and was thence, until taken into possession by the receiver in this action, in the possession of and under the control of the last-named company —a fact which may have led the court, in connection with the other evidence, to conclude that no offer of rescission was made. He who would rescind a sale for fraud must act diligently upon discovering such fraud, and must show himself not only willing but able to return the property received by him (if any) by virtue of such sale. The evidence is sufficient to support the finding.

The third and fourth points made by appellant relate to five depositions taken by stipulation in New York City. These depositions related to the indorsement of the several notes by the Florida Company for a valuable consideration, and without notice to sundry parties and by the latter to plaintiff for collection. The notes were produced before the referee, and marked for identification from A to L inclusive by the commissioner. When the depositions were offered in evidence, it was objected "that the exhibits which were put in evidence are not annexed to it (the deposition) and the commission had not been properly executed." Counsel for respondent replied to the objection by saying: "There is no reason why they should be attached. They are identified," and the court overruled the objection, and admitted the depositions. To which ruling defendants excepted. There was not at the trial any suggestion or objection by appellant that the exhibits were not sufficiently identified. The objection was as above stated, that they were not attached to the several depositions. Our code is silent upon this question, and in the absence of a positive statute, exhibits properly identified need not be attached, and if proven may be identified by parol. (*Dailey* v. *Green*, 15 Pa. St. 118; Weeks on Depositions, secs. 194, 358, 527,and cases there cited.) The objection that the exhibits were not properly identified is made here for the first time, and cannot be considered.

The objection to the admission in evidence of the certificate of W. L. Criglar is without merit. Criglar was a witness for the defendant, and had testified that he was a mechanical engineer, employed by the Oregon Development Company as their port engineer; that he had regulated the quantity of coal taken on the steamship in question during each trip, amount used by her, the kind and character of coal used, etc., and on cross-examination said: "Cumberland or anthracite is about twenty per cent better for steaming purposes than Wellington or Sidney." The certificate was identified by the witness as being in his handwriting and signed by him, directed to his company, and certified as to the quantity of Sidney coal the ship consumed ordinarily in a passage from San Francisco to Baquina, and that "the best quantity of Sidney coal is at no time equal for steaming purposes to within twenty per cent of best quality of

George's Creek Cumberland coal." The certificate was offered while the witness was on the stand, and we may suppose for the purpose of contradicting what he had just said as to the relative value of two kinds of coal. It was competent for that purpose, although there was no material contradiction. The finding on the question involved was in favor of defendant, and had the admission of the certificate been erroneous, defendant could not have been injured by its admission. The proofs were sufficient to warrant the findings.

The other errors assigned are either unimportant or are in substance the same as urged upon the appeal from the judgment, and have been noticed elsewhere. Sections 3406 and 3408 of the Civil Code, authorizing courts to rescind contracts upon the application of a party aggrieved, gives no rights to the parties in cases of this character not accorded by courts of equity prior to their adoption.

It is recommended that the judgment in case No. 14225, and the order appealed from in case No. 14979 be affirmed.

HAYNES, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion, the judgment in case No. 14225 and the order appealed from in case No. 14979 are affirmed.

MCFARLAND, J., FITZGERALD, J., DE HAVEN, J.