[Civ. No. 2823.    Third Appellate District.—March 10, 1926.]

## CALIFORNIA CREDIT AND COLLECTION CORPORATION (a Corporation), Appellant, v. J. A. CARPENTER, Respondent.

[1] FRAUD — PROMISSORY NOTES — DEFENSIVE RELIEF — RESCISSION.—In an action upon promissory notes the defendant may set up fraud as a basis of a defense to defeat the action, and where such defensive relief is sought and no affirmative relief is asked, it is not necessary for the defendant to have exercised an existing right to rescind.

[2] ID.—PURCHASE OF STOCK IN PACKING CORPORATION—REPRESENTATIONS—EXISTING FACT.—Representations by a packing company to a raiser of livestock inducing the latter to subscribe for stock of the company and give his promissory notes therefor, to the effect that a certain city was going to have located within its boundaries a well-equipped and up-to-date packing plant and stockyards, that the company would establish a packing plant and stockyards in said city, and that the establishment of such a plant and stockyards in close proximity to his cattle and sheep-raising farm would be an advantage and benefit to him, were as to an existing or present fact, and material.

[3] ID.—ACTION UPON PROMISSORY NOTES—REPRESENTATION—INTENTION TO PERFORM — FINDINGS — EVIDENCE.—In this action upon promissory notes given by the defendant to a packing corporation for stock subscribed by defendant, which notes defendant claimed he was induced to sign and deliver through fraudulent representations made by the corporation, the finding that the corporation never at any time had any intention of locating its packing plant and stockyards within the limits of a certain city was sufficiently supported by the evidence.

[4] ID.—PROMISE—REPRESENTATION—INTENT.—While a mere promise is not a representation, a promise made with the intention of not performing it constitutes a fraud for which a contract may be rescinded or avoided.

[5] ID.—DAMAGE—PLEADING—EVIDENCE.—In such action, the contention that it was essential that defendant, in order to prevail, should plead and prove that he suffered substantial or some actual

1.  See 12 Cal. Jur. 786.
4.  See 12 Cal. Jur. 738; 12 R. C. L. 261.

damage from the fraudulent representation whereby the corporation induced defendant to execute and deliver to it the note in suit, cannot be sustained.

(1) 8 C. J., p. 780, n. 34; 14 C. J., p. 589, n. 94. (2) 14 C. J., p. 603, n. 74, p. 605, n. 90, p. 609, n. 14. (3) 13 C. J., p. 394, n. 6; 14 C. J., p. 603, n. 74. (4) 13 C. J., p. 382, n. 30, p. 386, n. 54; 14 C. J., p. 609, n. 13, 14. (5) 14 C. J., p. 613, n. 57, p. 614, n. 58; 26 C. J., p. 1182, n. 93, p. 1183, n. 99 New.

APPEAL from a judgment of the Superior Court of Colusa County. Ernest Weyand, Judge. Affirmed.

The facts are stated in the opinion of the court.

James R. Cunnyngham and Daly B. Robnett for Appellant.

Thomas Rutledge for Respondent.

HART, J.—The plaintiff brought this action to recover on three different promissory notes, executed and delivered by defendant to the Virden Packing Company, a corporation. Each of the notes is dated July 17, 1919, and each is for the sum of $250, with interest after maturity at the rate of six per cent per annum. The notes represented the remainder of the total purchase price of ten shares of stock of the Virden Packing Company subscribed for by defendant after the payment thereon by the latter of the sum of $250 in cash, and were made payable, respectively, four, eight and twelve months after date. The complaint is in three separate counts and therein the notes are separately declared upon in the order of the seniority of their maturity. It is alleged that the notes were, prior to the commencement of this action, duly assigned to the plaintiff, and that it "is now the owner and holder thereof."

The answer, admitting the execution and delivery of the notes as alleged in the complaint, charges that they were made and delivered by defendant and that he was induced to make and deliver them to plaintiff's assignor by and upon certain false and fraudulent representations by the latter. The special defense set up in each of the three several counts of the complaint is, *mutatis mutandis*, identical,

and is as follows: That the consideration for the notes in suit was the purchase price of certain stock of the Virden Packing Company for which defendant subscribed and which he agreed to purchase; that, at and prior to the time defendant subscribed for said stock and executed said promissory notes, he (defendant) was engaged extensively in the cattle and livestock business in the northern part of California, "and as an inducement to defendant to subscribe for and purchase said stock and execute said promissory note, said Virden Packing Company represented, promised and stated that it would establish a Union Stock Yard and a packing plant at or near the City of Sacramento which would be a great advantage to the defendant in marketing his live stock and live stock products and thus enable him to save large sums in freight in so marketing his live stock. That at the time said representations were made there was no stock yard or packing plant for such purposes in the State of California north of the City of San Francisco, and the establishment of such a stock yard and packing plant at the City of Sacramento would have been a great advantage to said defendant, and was the sole inducement to him for subscribing for said stock and the execution of said note. That a copy of the letter of said Virden Packing Company making said representations as aforesaid is hereto attached and made a part of this answer; that said Virden Packing Company did not and never has established a stock yard or packing plant, or any stock yard or packing plant or any plant, market or place at or near the city of Sacramento where said defendant could sell or market his cattle, live stock or live stock products, but established the same at and near the City of San Francisco where there was already such a stock yard and market and live stock and the inducement and consideration for the subscribing for said stock and the execution of said note thereby has wholly failed, and the representations and promises on the part of said Virden Packing Company that said stock yard and packing plant would be located at Sacramento were fraudulent and made without the intention of performing the same and made for the purpose of inducing the defendant and other persons to subscribe for said stock."

The letter referred to by and expressly made a part of the answer was written upon the letter-head stationery of the plaintiff's assignor and is here given in full:

"Executive Offices—Capital National Bank Building
"Virden Packing Company
"(and Union Stock Yards)
"Chas. E. Virden, President.
"J. H. Glide, Vice President       C. M. Hartley, Treasurer
"F. F. Atkinson, Secretary.        Peter B. Newman,
"Ass't. Treasurer.
"Capital Stock $5,000,000.00
"Sacramento, Cal., May 3, 1919.
"Mr. G. A. Carpenter,
"Box 741 Colusa, Cal.
"My dear Sir:—

"I would like very much to meet you personally and tell you what the plans of the Virden Packing Company are, what it hopes to do for the livestock men of the West, and how it came into being; but I find it impossible to talk personally to all the cattle, sheep, and hog men of California, and so must write to you instead.

"After a three years' thorough investigation of the livestock and packing situation in the Western States, I came to the conclusion that the most vital need of California's agricultural industries at the present time is a Union Stock Yards, open to all, and large enough to handle the livestock of California and adjacent states, and Packing Plants capable of handling the raw products of these states.

"A Union Stock Yards means the establishment of a market for livestock near the point of production, not thousands of miles away. A Union Stock Yards open to all buyers and sellers alike, where lean as well as fat marketable stock may be consigned and find a ready purchaser, where prices will be established, and where the stock man will receive fair prices for his products, the same as prevail at Chicago, Kansas City, Omaha, and Portland.

"As it is now, a large percentage of the livestock raised in the Western States is shipped to eastern markets, where higher prices prevail at all times, owing to an open market existing at those points. Thus the livestock men of the West are handicapped by having to ship large quantities of their livestock East in order to obtain satisfactory prices.

The freight charge per carload of livestock to Chicago is $285. Then it costs the consumer of packing houses in California $2.50 per 100 pounds to have delivered to him these products made from western livestock.

"Naturally the first question to arise, when the establishment of the Union Stock Yards and Packing House Plant was contemplated, was the one of location. My associates and I investigated this question thoroughly, for we realized its vital importance. We found that San Francisco is the financial center of the State, Oakland and Stockton the manufacturing centers, Fresno the center of the raisin industry, and Sacramento the agricultural center. San Francisco and Oakland, largely dependent upon the agricultural district of the Sacramento and San Joaquin valleys, and no doubt interested in the growth of these districts.

"Our investigations showed that Sacramento is at the present time the home of the Swanson Packing Company, the Charles F. Silva Company, and many smaller meat concerns, which together with the Virden Packing Company and other packing concerns that will be attracted to Sacramento, creates an immediate demand for a Union Stock Yards at this central point.

"Undisputable facts showed that Sacramento is the natural transportation and packing center of the vast agricultural area. By reason of her trunk lines of railroads, coming direct from the stock producing districts of the Western States, and her deep sea connections by way of the Sacramento River, Sacramento is capable of handling the vast volume of business which will result from making this the livestock center of the West.

"Will you not agree with me that it is time that, not only the livestock grower of the Pacific Coast, but the consumer of packing house products as well, awaken to the necessity of having at home an institution thoroughly prepared to handle the entire output from all over our own territory, instead of paying the heavy freight toll, which has been and is being paid today?

"If a Union Stock Yards is not a necessity to the grower of livestock, permit me to ask you why every state in the Union, where livestock is raised, has for many years past maintained its central markets or Union Stock Yards?

"Although the Virden Packing Company and Union Stock Yards is an absolutely independent institution, it extends an invitation to all growers of livestock, meat packers, and consumers of the Western States to cooperate with us for the good of all concerned.

"*Sacramento is going to have located within its bound-aries a well equipped and up-to-date Packing Plant and Union Stock Yards. My associates and I ask you for your support and cooperation.*

"I thank you for the time consumed in the reading of this letter, setting forth the plans of what I consider the most important California institution, indispensable if the live-stock industry of the West is to keep pace with other agricultural developments.

"Yours very truly,

"CHAS. E. VIRDEN,

"President."

An amendment to the answer, filed by leave of the court, alleged that, prior to the commencement of this action, defendant tendered and offered to restore to the packing company all the right, title, and interest to and in the stock agreed to be purchased by him and for the balance of the purchase price of which he made and delivered the notes in suit. Defendant did not ask for affirmative relief.

The action was tried by the court, sitting without a jury. Findings as to the charge of fraud as set forth in the answer and that defendant was induced by such fraud or false representations to subscribe for the stock of the packing company and to execute the notes in suit as alleged in defendant's said pleading were made by the court. The court also found that the fact of the fraudulent representations by which defendant was induced to subscribe for the stock and execute the notes in suit was known to plaintiff at the time it took over after their maturity the notes declared upon; that defendant, prior to the commencement of this action, in the year 1920, tendered and offered to the packing company said stock, so agreed to be purchased, and all the right, title, and interest therein and right thereto; that defendant, ever since making such tender and offer, has been ready and willing to "surrender up and cancel all his right, title, and interest in and to said stock, and did, with his answer herein," make such tender and offer; that the packing company then and

always refused "and still refuses to accept return of said stock." In strange contrast to the allegations of the amendment to the answer and the finding that the defendant tendered a return of the stock to the packing company, the court further found "that none of said stock has ever been issued or delivered to the defendant." The evidence shows, however—in fact, it was not disputed at the trial— that the stock was never issued to defendant. But the case here is not, as to either of the parties, strictly one for the rescission of a contract or the notes in issue here. The defendant received nothing of value by reason of the transaction eventuating in the making and delivery of the notes to the packing company and, as seen, asks for no affirmative relief. He merely sets up a legal excuse from the performance by him of a contract to which, in legal contemplation, he never assented or agreed. [1] In other words, he simply asks for defensive relief, in support of which he has set up fraud, or, in other terms, has set up fraud as a basis of a defense to defeat "an action brought to enforce an apparent obligation or liability." (*Toby* v. *Oregon Pac. R. R. Co.,* 98 Cal. 490, 498 [33 Pac. 550].) This is one of the three methods for relief or defense afforded defendants in cases of this character (*Toby* v. *Oregon Pac. R. R. Co.,* 98 Cal. 490 [33 Pac. 550]; *Field* v. *Austin,* 131 Cal. 379, 282 [63 Pac. 692]; *J. B. Colt Co.* v. *Freitas,* 76 Cal. App. 248 [244 Pac. 916]), and where, as here, such defensive relief is sought and no affirmative relief is asked, "it is not necessary for the defendant to have exercised an existing right to rescind." (*Simon Newman Co.* v. *Lassing,* 141 Cal. 174 [74 Pac. 761]; 12 Cal. Jur. 786; *J. B. Colt Co.* v. *Freitas, supra.*) Our views upon these questions are also fully covered in our opinion in the case of *California Credit & Collection Corp.* v. *Goodin,* 76 Cal. App. 785 [246 Pac. 121], which was filed in this court March 8, 1926. Further consideration herein of the questions is, therefore, not required.

The plaintiff appeals from the judgment and submits to us two propositions upon which it principally relies for a reversal. The first is that the statements or representations, as shown by the answer, the findings and the evidence, by which the defendant was induced to subscribe for the stock of the packing company and to execute and deliver to the latter the notes in suit, amounted to no more than a mere

promise or agreement to perform some future act, and, therefore, do not possess those elements of the representations which must be present to destroy the binding force of an obligation induced thereby, or, in other words, cannot be made the basis of an action for fraud. The second is that the defendant failed to show that he suffered any damage by reason of the fraud alleged to be at the bottom of the transaction involving the making of the subscription contract and the execution and delivery of the notes to plaintiff's assignor.

The defendant testified that he was, at the time he subscribed for the stock and made and delivered the notes in suit, and had been a long time prior thereto, engaged in the business of raising and selling sheep and cattle in Lassen County, in the northern part of the state of California and north of the city of Sacramento; that an agent of the packing company called on him at his place of residence and orally made substantially the same representations to him as are contained in the letter above reproduced herein with regard to the purpose of the company to establish a packing plant and stockyards in the city of Sacramento; that, in fact, said agent represented to him that the packing company intended to locate its plant and stockyards in Sacramento; that he emphasized the fact, as did the letter referred to, that it would in a financial way prove advantageous and profitable to him (defendant) and other stockraisers in the northern part of the state to establish a packing plant and stockyards at Sacramento; that he, in effect, said to said agent that he realized that if, as he (the agent) and the letter stated, a packing establishment and stockyards were located at Sacramento, "there would be a special advantage to me from a hauling standpoint and general marketing conditions; the nearer our market would be to our place of produce, the less the shrinkage in getting our stock to market, and better marketing advantages." Defendant testified that, upon the representations by the agent and those contained in the letter above quoted herein, he subscribed for ten shares of the stock of the packing company at the rate of $100 per share; that he paid $250 cash down and for the balance or as evidence of the balance he owed on the purchase price, he gave to the packing company the promissory notes described in the complaint. Defendant further

testified that, some time after the above negotiations and transaction took place, he made a visit to Sacramento and thereupon discovered that no steps whatever had been taken by the company or any other person to establish a packing plant and stockyards or either at said place; that thereafter he learned and found it to be the fact that the packing company had taken over the Moran packing plant in San Francisco; that a packing plant and stockyards or either had never been established at or within the limits of the city of Sacramento by plaintiff's assignor, but that said company had definitely and permanently located its plant, etc., at San Francisco. He testified that, in subscribing for the stock and making and giving to the packing company the promissory notes which constitute the foundation of this action, he relied upon the representations made to him by the packing company's agent and those contained in the letter addressed to him by the packing company and above incorporated into this opinion to the effect that said company would establish its plant and stockyards at Sacramento, where, for the reasons given by him and above set forth, such an establishment would be of peculiar advantage and benefit to him and other stockraisers in the northern sections of California, in that they would, by reason of the nearness in proximity of such a plant and stockyards to his and their stock-producing farms, realize increased profits on their products, and that but for the representations and assurances so made, he would not have subscribed for the stock or given the notes in question. He further testified that, after learning that the packing company had located its plant at San Francisco, as above indicated, and further learned that it did not intend to locate a plant and stockyards in Sacramento, he called at the office of the company, in San Francisco, and demanded a rescission of his contract to buy the stock and the cancellation of the notes sued on, and at the same time offered to return and tendered to the company any right, title, or interest in and to any stock of the company which he might have acquired therein by reason of said subscription contract, but that the packing company refused to comply with said demand.

The testimony of defendant, of which the foregoing statement embraces a fair *résumé*, was not disputed by plaintiff, nor was there any attempt to contradict it. The letter from

the Virden Packing Company to defendant, above presented herein, was introduced in evidence, and its authenticity was not questioned nor its contents contradicted or disputed. [2] We think the representations which the evidence shows were made by plaintiff's assignor to defendant and by which the latter was induced to subscribe for the stock and give the packing company the notes in suit were as to an existing or present fact and material.

In *Russ L. & M. Co.* v. *Muscupiabe L. & W. Co.*, 120 Cal. 521 [65 Am. St. Rep. 186, 52 Pac. 995], it appears that the defendant, an irrigation company, represented to plaintiff that it had the ability to furnish the plaintiff with sufficient water to satisfy its needs for the purposes of irrigation, and that upon such representations the defendant obtained certain promissory notes from plaintiff as evidence of the latter's agreement to pay the amounts represented by the notes for the water so to be furnished; that said defendant was later shown to be wholly unable to furnish the quantity of water which it had represented to plaintiff that it was able to furnish, and that the representation was false and so known to be by defendant when made. It was there contended that "the representations were respecting future acts only," and that such representations "do not, in contemplation of law, amount to a fraud," and could be neither false nor true when made. To which proposition the supreme court replied: "But counsel in this contention confuse and fail to distinguish between 'promises' and 'representations.' A mere promise to perform an act in the future is not, in a legal sense, a representation, nor does a failure to perform such promise convert it into a false representation; but if the promise is accompanied with statements of existing facts which show the ability of the promisor to perform his promise, and without which the promise would not be accepted or acted upon, such statements are denominated representations, and if falsely made are grounds of avoiding the contract, though the thing promised to be done lies wholly in the future." (See, also, *California Credit & Collection Corp.* v. *Goodin, supra.*)

In this case the plaintiff's assignor not only pointed out to the defendant what would obviously be true to wit, the beneficial result to him as a raiser of livestock for the market of the establishment of a packing plant and stockyards in

closer proximity to his cattle and sheep-raising farm than was any such enterprise then existing in California, but also represented to him, in clear, unqualified language, that ''Sacramento was going to have located within its boundaries a well-equipped and up-to-date Packing Plant and Union Stock-Yards,'' thus assuring defendant that the company had a settled and fixed purpose and the financial ability, at the time such representations were made, to install, establish, and equip a packing plant and stockyards within the limits of the city of Sacramento. These and the other representations, both oral and written, made by the packing company to defendant that such an establishment would be located at the place just named involved, as we have before declared, the representation of a material existing fact—the fact that the determination had then been fixed upon by the packing company to establish a packing-house and stockyards at Sacramento. [3] But the court found that the Virden Packing Company never at any time had any intention of locating a packing plant and stockyards within the limits of the city of Sacramento. All the circumstances, as disclosed by the evidence, indicated that that finding stated the truth and, indeed, sufficiently support said finding. [4] While, as stated, ''a mere promise is not a 'representation,' a promise made with the intention of not performing it constitutes a fraud for which a contract may be rescinded or avoided.'' (*Russ etc. Co.* v. *Muscupiabe etc. Co., supra;* Civ. Code, sec. 1572, subd. 4, and sec. 1710, subd. 4.)

[5] The second proposition urged by plaintiff for a reversal, as indicated above, is that, in order to prevail in this action, it was essential that defendant should plead and prove that he suffered substantial or some actual damage from the fraudulent representation whereby, it is alleged, plaintiff's assignor induced defendant to execute and deliver to it (the packing company) the notes in suit. The precise question thus submitted is considered and determined against the position of plaintiff here in the opinion of this court in *California Credit & Collection Corp.* v. *Goodin, supra,* and the cases therein cited. Nothing further of special force can here be added to what is said in the opinion in that case upon the proposition.

We have been shown no just reason for disturbing the result arrived at below, and the judgment is therefore affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1926.