[Civ. No. 882. Fourth Appellate District.—October 1, 1931.]

NEILSON MASTEN, a Minor, etc., Appellant, v. FOX WEST COAST THEATRES (a Corporation) et al., Respondents.

Edward J. Kelly for Appellant.

Alfred Wright, Albert W. Leeds and John B. Bertero for Respondents.

MARKS, J.—This appeal is taken from a judgment entered in favor of respondents after the sustaining of demurrers to appellant's second amended complaint without leave to amend. The Fox West Coast Theatres filed a general demurrer and the Guardian Western Company a general and special demurrer to the amended complaint. The second named respondent has not filed any brief on this appeal, but it is stipulated that the brief filed on behalf of the Fox West Coast Theatres may be assumed and considered the brief of the Guardian Western Company. As the grounds of special demurrer urged in the court below are not presented or argued on this appeal, we may consider them abandoned and confine our attention entirely to the merits of the trial court's order sustaining the general demurrers to the amended complaint.

It appears from the record that Neilson Masten, at the time this suit was instituted, was a minor of the age of twenty years, and that Annette Van R. Masten, his mother, was appointed his guardian *ad litem* for the purpose of prosecuting this action.

It is alleged in the amended complaint that the respondents, and each of them, caused to be published in the daily papers of San Diego, an advertisement reading as follows:

"$5,000 Equity on Prize List. This is the beautiful $10,500 Point Loma home at 3936 Centraloma drive, in which a $5,000 equity will be given by the Guardian Western Company as one of the prizes for winning contestants in the Fox Theatre popularity contest, which will start tomorrow. Fox Popularity Competition to Open Tomorrow. Thousands of Dollars in prizes await the winners; read story for directions. Tomorrow is the day! For tomorrow the Fox Theatre starts the greatest popularity contest ever held in California. The idea is to select the most popular boy and girl between the ages of 14 and 25. It isn't a new stunt, but the manner in which this is to be carried out places it in a class by itself. The prizes are enough to stimulate interest in a wooden Indian, and the best is yet to come, but will be divulged later through these columns. Here's the Idea. Here is the idea in a nutshell. With every ticket purchased in any San Diego Fox Theatre, beginning tomorrow, 10 votes will be awarded the purchaser. With every $5 scrip book bought, 200 votes are awarded. In order to become a contestant it is necessary to secure and present 1000 votes. A large board carrying the names of the contestants will be erected in the foyer of the Fox Theatres. This will be operated in much the same manner as a stock exchange board, with the record of every contestant kept up to the minute, and open to inspection by anyone attending the Fox Theatre. Following are a few of the prizes to be offered to winning contestants. A $5,000 equity in a home will be given by the Guardian Western Company. It is a beautiful $10,500 Point Loma home at 3936 Centraloma drive. A new 1930 Chevrolet sport roadster, fully equipped, will be awarded by the Bay City and Campbell Chevrolet companies. This car will be seen on display in the window on the corner of Seventh and B streets. Other Major Prizes. An airplane trip covering the entire Western Air Mail Express line over a distance of more than 3000 miles is being given by the Western Air Express. The Fox Theatre will furnish all incidental expenses of this trip. A complete ground school course will be awarded by the Pacific Technical University located at 2157 India street. Mrs. John P. Mills of the Point Loma Riding Academy is giving a beautiful riding horse. These are but a few of the major prizes. Others will be announced later through

these columns." This advertisement was accompanied in the papers by a picture of the house.

It is further alleged that the respondents, and each of them, promised and agreed that the $5,000 equity in the real property described would be given to anyone complying with the terms of, and accepting the offer, and that in making the offer each of the respondents was the duly authorized and acting agent of the other.

It is further alleged that appellant was advised of the offer and relied thereon, and for the purpose of securing one of the prizes mentioned, sold scrip books and tickets in and around San Diego for the Fox West Coast Theatres, procured the votes of the purchasers, and in every respect complied with each and all of the terms of the published offer; that he ranked third in the number of votes awarded in the contest and chose the Point Loma home as his prize; that he relied upon the representations contained in the offer that such home was of the value of $10,500 and that the equity therein to be conveyed to him was of the value of $5,000 and that he demanded of respondents that a $5,000 equity in the home be conveyed to him; that the Point Loma home was not of the value of $10,500, but was worth no more than $6,000; that respondents tendered to him a deed to the property upon condition that he give back a deed of trust on the property in the sum of $5,500, so that appellant would receive an equity in the home of not more than $500 instead of $5,000 as set forth in the advertisement; that these facts were well known to both respondents and that their representations in the advertisements were false and untrue and known to them and each of them to be false and untrue and were made for the purpose of defrauding appellant and the others engaged in the contest; that appellant relied upon such false and fraudulent representations and was thereby caused by them to contribute his labor, time and services in selling the scrip books of the Fox Theatres to his damage in the sum of $5,000; that the representations made by respondents in the offer were made fraudulently and with malice, and that neither respondent intended to perform the same, and that each of them intended to defraud and deceive by the promises which they made without any intent to perform

them. In addition to the actual damage of $5,000, appellant sought to recover punitive damages.

Both parties agree that the term "equity", as used in the advertisement, has a well-defined and well-understood meaning in the sense in which it was there used. They agree that by universal custom this word, when used in connection with real estate value, means a clear market value in excess of the encumbrances upon a parcel of property. By demurring to the amended complaint respondents have admitted the truth of all its material allegations.

Respondents strenuously maintain that although the advertisement contained a statement that the Point Loma property was of the value of $10,500 they could not thereby be held for damages, because statements of the value of property about to be sold have been held to be statements of opinion and not statements of a fact upon which the other party can rely where the means of investigation and of ascertaining the true value are open and available to such party. They cite many cases in support of this doctrine. While we may assume, but not concede, the correctness of this rule, we conclude that it is not controlling in the instant case.

■ An analysis of the advertisement which we have quoted discloses that the portion of it relating to the Point Loma property contains three separate representations: First, there is the statement that this property was of the value of $10,500; second, there is the statement that the equity to be given as one of the prizes was of the value of $5,000; and, third, by inference, that the encumbrances upon the property would be $5,500. The advertisement contained the following phrases: "$5000.00 equity on prize list", "a $5000.00 equity will be given", "$5000.00 equity in a home will be given". These phrases can be construed into nothing less than a promise to give a successful prize winner a $5,000 equity in this home. The phrase "$5000.00 equity" means nothing more nor less than a clear market value in the property of $5,000 over and above encumbrances. This advertisement contained the direct promise to give such equity to one of the successful contestants.

Actual fraud is defined by section 1572 of the Civil Code as follows: "Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by

a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; 3. The suppression of that which is true, by one having knowledge or belief of the fact; 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive.''

Section 1709 of the Civil Code is as follows: ''One who wilfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.'' Section 1710 of the Civil Code is as follows: ''A deceit, within the meaning of the last section, is either: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4. A promise, made without any intention of performing it.''

In 12 California Jurisprudence, 738, it is said: ''The code provides that 'a promise made without any intention of performing it' constitutes actual fraud or deceit, if by means of it a party has been induced to alter his position to his injury. It is, therefore, firmly established that where, in bad faith and without intent to perform, one makes a promise touching a substantive part of the consideration moving to the party with whom he is dealing, it constitutes fraud. The essence of the fraud in such cases is not the breach of a promise, but the fraudulent intent not to perform; and such fraudulent intent must exist at the time of the making of the promise. Subsequent conduct may be sufficient to show that there was no intention of performing at the time of the promise. Thus there is a decision that, where a cashier and manager of a bank promises to return a note, the subsequent attempt of the bank to collect the note is sufficient to show a fraudulent intent. Where the circumstances were such at the time of the making of a promise that it would be impossible to perform, the promise

will be held to be fraudulent." The cases cited amply bear out the text.

In the case of *Mazuran* v. *Stefanich*, 95 Cal. App. 327 [272 Pac. 772, 774], the court said: "The court found, as we have seen, that appellant orally agreed to perform seven distinct legal services for respondents and fraudulently induced respondents to execute a writing which they believed provided for all seven services, but which in fact provided for only one. It is clear from this that appellant in no event intended to perform, or to endeavor to perform, the six services which he caused to be omitted from the written agreement prepared by himself. A promise made with no intention of performing it is actual fraud. (Civ. Code, sec. 1572, subd. 4.) The gist of appellant's fraud in this case was not that he promised to do something which he could not do, but that he promised to do something which he did not intend to do."

In the case of *Lundblade* v. *Boyes*, 101 Cal. App. 741 [282 Pac. 399], it was said: "The promise made by defendants without any intention of performing the same constituted, under the circumstances shown, wilful deceit (Civ. Code, sec. 1710), for which they were liable for any damage thereby suffered by the plaintiff (Civ. Code, sec. 1709)."

This same question was considered in the case of *Bouey* v. *Porterfield*, 96 Cal. App. 674 [274 Pac. 766], where the following was said: "The trial court found that the statements and representations of Deyot and Porterfield that they would each purchase one-third of the capital stock of said corporation and pay $8,333.33 therefor, that they had $400,000 of the bonds of the Imperial Gypsum Company to sell, $150,000 to finance the erection of a terminal warehouse, or were going to finance the Whitewater Cement Company and that respondent's investment would be returned to him within ninety days were all untrue, false, and fraudulent, were known to said Deyot and Porterfield to be false and untrue, that their said promises were made without any intention on their part of performance, and were made for the purpose and with the intent of causing and inducing respondent to pay the $3,500 in cash, and that, relying upon said representations and believing them to be true, respondent paid over to said Deyot and Porterfield the said sum of $3,500, and all of these findings are supported by the

evidence. . . . Mere failure to perform a promise made in good faith does not constitute actionable fraud. However, a promise made without any intention of performing it is actionable fraud. (Subd. 4, sec. 1572, Civ. Code; *Rheingans* v. *Smith,* 161 Cal. 362 [Ann. Cas. 1913B, 1140, 119 Pac. 494]; *California Credit Corp.* v. *Carpenter,* 77 Cal. App. 18 [246 Pac. 126].) And the intention not to perform a promise is a matter of inference from the facts proven. (*Holiday* v. *Tolosano,* 39 Cal. App. 151 [178 Pac. 170].) In the case of *Henry* v. *Continental Building etc. Assn.,* 156 Cal. 680 [105 Pac. 960, 965], the court said: 'A party inducing another to contract in reliance upon estimates or opinions professedly based upon alleged facts known to the party stating them to be nonexistent will not be permitted to escape responsibility by the plea that he was merely declaring his opinion.' Appellant claims that respondent had the opportunity of discovering and should have known and discovered the falsity of the representations of Deyot and Porterfield, if, in fact, the said representations were untrue. There is no evidence that respondent had such opportunity. The contract was drawn up and the money paid over immediately after the false representations and the false promises were made to respondent. Even though opportunity for investigation was open to respondent, this, of itself, would not prevent his recovery in this action. Bigelow, in his work on Fraud, volume 1, section 523, says: 'The proposition has now become very widely accepted at law as well as in equity, that a man may act upon positive representations of fact, notwithstanding the fact that the means of knowledge were specifically open to him.' And Pomeroy's Equity Jurisprudence, section 896, also lays down the rule that the mere existence of opportunities for examination are not sufficient to prevent reliance upon fraudulent representations assumed to be within the knowledge of the party making them. In the case of *Teague* v. *Hall,* 171 Cal. 668 [154 Pac. 851], the Supreme Court of this state said: 'This view of the law has been repeatedly declared in the decisions of this state,' and among the numerous cases cited in support thereof calls attention to the case of *Ruhl* v. *Mott,* 120 Cal. 668 [53 Pac. 304], wherein the court said: 'It is true that where one is justified in relying, and in fact does rely, upon false representations, his

right of action is not destroyed because means of knowledge were open to him.' ''

The case of *Blodgett* v. *Trumbull,* 83 Cal. App. 566 [257 Pac. 199, 202], is particularly illuminating upon the question we are considering. The defendant Grace Sherwood Trumbull owned various lots in the Casitas tract in Santa Barbara, California. She sold one of these lots to the plaintiff for a valuable consideration. The deed conveying the property contained a number of restrictions which were declared to be conditions running with the land. Later Mrs. Trumbull sold other lots in the same tract without similar restrictions being set forth in the deed. The amended complaint of the plaintiff alleged a promise on the part of Mrs. Trumbull that she would insert similar restrictions in all other deeds to all the lots in this tract. Her failure so to do was also alleged, together with the allegation that the promise to the plaintiff was made without any intent to perform on the part of Mrs. Trumbull and with intent to defraud the plaintiff and induce her to accept title to her lot subject to these restrictions. The trial court sustained a demurrer to the amended complaint which, on appeal was held error. The appellate court said: ''Her demurrer admits not only that the promises alleged were made in order to induce plaintiff to buy lot 7, but that they were made without intent to perform; and the deed to McFadden shows that in conveying to him lots 1 to 6, defendant Trumbull did not keep her promises. Hence the second count does state a cause of action against her.''

In the instant case the demurrers of respondents admit their promise to give and convey to appellant a $5,000 equity in the Point Loma property. They admit that this promise was made without any intention on their part to perform and admit that they failed and refused to perform their agreement. They further admit that instead of conveying to appellant a $5,000 equity in the property they only offered to convey him a $500 equity in it. They admit that the appellant accepted their offer and relied upon it as true and spent his time and energy in performing his part of the obligation. They admit that they received the benefits of appellant's effort for which they have paid him nothing. They should not be permitted to escape the liability of their promise and keep the results of the time and

energy expended by appellant because of a refinement in their reasoning as to their representations of the value of the Point Loma property. As appears from the allegations of the amended complaint, they made a definite promise to appellant which they should have performed or be required to respond in damages for their failure so to do. The parties should be put upon their proof as to the truth or falsity of these representations.

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 23, 1931, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 30, 1931.