[Civ. No. 8171. First Appellate District, Division One.—January 20, 1932.]

W. S. EADE, Appellant, v. EMIL REICH et al., Respondents.

34

J. A. Bardin and J. T. Harrington for Appellant.

Scott & Pioda and C. F. Lacey for Respondents.

THE COURT.—The above action was upon a promissory note for $1800 executed by defendants to plaintiff on January 4, 1928, and payable one day after date. Defendants by their answer and cross-complaint alleged in substance that plaintiff was the owner of 160 acres of land in Monterey County; that on the date of the note one Bauman, otherwise known as Schutz, was plaintiff's agent for the purpose of selling this land to defendants; that Bauman falsely and fraudulently, with the intent to deceive and induce defendants to purchase, represented himself to be employed by the Standard Oil Company of California, a corporation, and that if they would purchase the above the corporation, through its agent (who, according to Bauman, was to arrive on the following Saturday), would lease 120 acres thereof

for a term of five years at an annual rental of $1200; that defendants, believing and relying upon the representations, purchased the land from plaintiff, paying therefor the sum of $3,000 in cash, and executed the note sued on the balance.

On May 8, 1928, defendants notified plaintiff in writing that they elected to rescind, and offered to reconvey the property upon the surrender of the note and the return of the amount paid, which offer was refused.

The trial court found the allegations of defendants' pleadings to be true, and that the land was of the value of $800 and no more. A judgment that plaintiff take nothing and that defendants, who had deposited in court a deed reconveying the property to plaintiff, recover the amount paid was accordingly entered.

Plaintiff, who has appealed therefrom, contends that the finding of agency is unsupported; that defendants were in default and not entitled to a rescission; that they were wanting in diligence in making a demand therefor and that their conduct in the transaction precludes relief in equity.

█ Fraudulent representations, to constitute ground for relief, must be as to existing and material facts, predictions as to future events being ordinarily regarded as nonactionable expressions of opinion (*Lawrence* v. *Gayetty*, 78 Cal. 126 [12 Am. St. Rep. 29, 20 Pac. 382]), but such statements will not preclude relief on the ground of fraud if they were intended and accepted as representations of fact and involved matters peculiarly within the speaker's knowledge (26 Cor. Jur., Fraud, sec. 25, p. 1090). █ Thus where one party possesses or assumes to possess superior knowledge regarding the subject matter of the representation, which knowledge is not equally open to the other, what might otherwise be regarded as an expression of opinion may amount to an affirmation of fact (*Haserot* v. *Keller*, 67 Cal. App. 659 [228 Pac. 383]; *J. B. Colt* v. *Freitas*, 76 Cal. App. 278 [244 Pac. 916]). And deceit may consist of the suggestion as a fact of that which is not true by one who does not believe it to be true (Civ. Code, sec. 1710; *Mitchell* v. *Tuttle*, 102 Cal. App. 16, 19 [282 Pac. 534]). So in *Langley* v. *Rodrigues*, 122 Cal. 580 [68 Am. St. Rep. 70, 55 Pac. 406], a statement by an agent that his principal would advance money to harvest a crop was held to be a representation of fact. And in *H. W. Smith, Inc.,* v. *Swenson*, 105 Cal.

App. 60 [286 Pac. 1050], a representation by a corporation that a dividend would be declared during a certain month was held to be a matter peculiarly within the knowledge of the corporation of which the other party was without knowledge, and constituted a statement of fact and not a promissory representation. The same was also held in *California C. & C. Corp.* v. *Carpenter*, 77 Cal. App. 18, 28 [246 Pac. 126], to the effect that a representation that a packing plant would be located in a certain city, this being, as the court said, ''a representation that the determination had been fixed upon by the corporation to establish a packing plant at Sacramento''. To the same effect are the following cases: *Gater* v. *Skinner*, 103 Cal. App. 448 [284 Pac. 697]; *Garrett* v. *Finch*, 107 Va. 25 [57 S. E. 604]; *Whitbeck* v. *Sees*, 10 S. D. 417. [73 N. W. 915]; *Farmers' Cooperative Grain Co.* v. *Startzer*, 112 Neb. 19 [198 N. W. 170]; *Commercial Sav., etc.,* v. *Kietges*, 206 Iowa, 90 [219 N. W. 44]; *Eichhorn* v. *Serlis & Co.*, 192 N. Y. Supp. 797 [118 Misc. Rep. 256].

While there is no direct evidence of agency there was strong circumstantial evidence of the fact. According to plaintiff, he had never met Bauman previous to the transaction in question; yet it is admitted that immediately thereafter he paid the latter $1500. This, plaintiff claims was a loan made without security and not evidenced by a note or otherwise, but which Bauman agreed to repay within a few days. It further appears that the amount was drawn from plaintiff's bank account by a check payable to cash, not indorsed by Bauman, and was paid to the latter in currency. On the back the plaintiff had written the word ''land''. Some time previous to the trial plaintiff's deposition was taken. At this time he denied that he had withdrawn the above amount from the bank since the deed was given. He further denied that he *gave* Bauman any check or money or any part of the proceeds of the sale. When confronted at the trial with his account at the bank showing the transaction he offered as an explanation of his previous statement that he had not *given* Bauman any part of the proceeds of the sale, that the money in question was a loan and not a gift, further stating that Bauman represented that he needed the money to enable him to ship certain drilling machinery from Los Angeles to the land, and that the amount would be repaid when he returned with certain persons who, he

claimed, were prospective purchasers of neighboring land owned by plaintiff. In addition to the above it appears that no effort to discover Bauman's whereabouts after the transaction was made by plaintiff, and, according to his testimony, the purchase price of the land was nearly three times its value for the purpose for which it was being used, namely, stock-raising.

 While the presumption is always against fraud, and the evidence in support of such an allegation must do more than create a mere suspicion (*Wendling etc. Co.* v. *Glenwood etc. Co.*, 153 Cal. 411 [95 Pac. 1029]), yet fraud need not be proved beyond a reasonable doubt (*Bullard* v. *His Creditors*, 56 Cal. 600, 603), it being sufficient if it be established by a preponderance of the evidence (Code Civ. Proc., sec. 2061, subd. 5; *Noll* v. *Baida*, 202 Cal. 98 [259 Pac. 433]). As the court said in *Edmonds* v. *Wilcox*, 178 Cal. 222 [172 Pac. 1101, 1102] : " . . . All judicial expressions concerning the necessity for clear and satisfactory proof of fraud must be construed in the light of the fundamental rule that a preponderance of evidence controls in a civil case."

 Agency may be implied from acts and circumstances (*Anglo-California Bank* v. *Cerf*, 147 Cal. 393 [81 Pac. 1081]) ; and those shown in the present case were such as to create more than a suspicion of collusion between plaintiff and Bauman, and were sufficient to justify the conclusion of the trial court that the acts complained of were the result of such an agreement.

 Section 1691 of the Civil Code requires the rescinding party to rescind promptly upon discovering the facts which entitle him to rescind; but it has been held that whether or not he has been diligent in that regard will depend upon all the circumstances of the case (*French* v. *Freeman*, 191 Cal. 579, 589 [217 Pac. 515] ; *Hunt* v. *L. M. Field, Inc.*, 202 Cal. 701 [262 Pac. 730]) ; and that where he has been lulled into inaction by his adversary he may be relieved from the consequences of his failure to act promptly (*Noll* v. *Baida, supra*). According to defendant Emil Reich, when Bauman failed to return he made several trips to plaintiff's home in an effort to see him in regard to the transaction, but due to the latter's absence was unable to do so. After the lapse of nearly a month they met by appointment, and plaintiff requested Reich to say nothing about the

matter, stating in substance that he would return the note to the defendants, but that they were bound to lose $1500 as he had given this amount to Bauman, who promised to sell several quarter-sections of the tract at the same price. These circumstances justified the conclusion of the trial court that the delay in rescinding was due to these negotiations, and that defendants used reasonable diligence in the premises.

The note was not returned, and nothing further appears to have been done until the notice of rescission was given; following which on May 31, 1928, suit was filed on the note.

We find no merit in the further claim that defendants, having failed to pay the note, which became due on the day following the completion of the transaction, were in default, and consequently not entitled to rescind. As held in *American-Hawaiian Eng. Co.* v. *Butler*, 165 Cal. 497, 516 [Ann. Cas. 1916C, 44, 133 Pac. 280], with respect to the application of the rule that a rescission without consent cannot be made except by one who is not himself in default, where the respective obligations of each party are dependent and concurrent, the necessity of the rule is obvious. So, also, where the rescinding party's default is so related to the obligation as to which the other party has failed that it in some manner affects the performance thereof, or the duty of the other party to perform, then the rule is applicable, but not where the delinquency of the rescinding party has no relation to that of the other in respect of which the right of rescission is claimed. And, as held by the same court in denying an application for a hearing after decision by the District Court of Appeal in *Debairos* v. *Barlin*, 46 Cal. App. 665, 674 [190 Pac. 188], the rule that a vendee is not entitled to rescind while he is himself in default by nonpayment of installments due on the purchase price applies only to cases where a rescission is sought by one party on the ground of a breach of the contract by the other. Payment by the vendee after discovery of fraud or mistake might tend to show a waiver thereof and thus defeat an attempted rescission; but a refusal to pay would be entirely consistent with the right of a vendee to rescind for such cause. To the same effect is *Lubarsky* v. *Chavis*, 99 Cal. App. 610 [279 Pac. 205].

Pending the negotiations and prior to a certain visit to plaintiff's home Reich asked Bauman whether he should

tell plaintiff of the oil project. Bauman replied in the negative, stating that he would tell plaintiff something else. Following this Bauman informed the plaintiff that he wanted the land for the purpose of raising pecans, and Reich, who was present, remained silent. It is claimed that by his failure to advise plaintiff of his real object in making the purchase defendant was guilty of bad faith, and should be refused relief in equity.

It is clear from the testimony that plaintiff was not deceived by Bauman's statement and that no reliance was placed thereon; in fact he makes no such claim; and in view of the finding that the relation of principal and agent existed between them it is manifest that the object of the statement as well as the admonition that Reich say nothing was to mislead the latter as to the true situation, and that no deception was or could have been practiced on the plaintiff. As stated in Pomeroy's Specific Performance of Contracts, section 218, one element of misrepresentation, alike requisite in every species of remedy, legal or equitable, is that it must have been relied upon by the party to whom it was made, and must be so far an immediate cause of the contract that without it the agreement would not have been completed. Unless the untrue statement is believed and acted upon it occasions no legal injury. To the same effect is *Kelly* v. *Central Pac. R. R. Co.*, 74 Cal. 557, 561 [5 Am. St. Rep. 470, 16 Pac. 386, 388], where it is said: "If the representation was intentional and made for the purpose of deceiving the vendor, and the vendor relies upon it and was deceived by it and would not have entered into the contract but for the fact that he was so deceived, then a court of equity will not enforce the contract. . . . " It is obvious that such was not the effect of the misrepresentation in the case at bar.

We are satisfied that the findings are fully supported and no ground for a reversal of the judgment has been shown.

The judgment is affirmed.