[Civ. No. 12349.   Second Dist., Div. One.—April 9, 1941.]

BIG BOY DRILLING CORPORATION, LTD. (a Corporation), Appellant, v. JOHN L. ETHERIDGE et al., Respondents.

Carleton B. Wood and Schell & Delamer for Appellants.

H. L. Carnahan, Rodney F. Williams and Carey Martin for Respondents.

DORAN, J.—This is an appeal by plaintiff, taken by means of a bill of exceptions, from separate judgments of nonsuit in favor of each of the defendants, rendered by the trial court sitting without a jury in an action brought to recover damages for the breach of an oil well drilling contract. The judgments were rendered following the sustaining of objections to the introduction of certain evidence offered by the plaintiff (appellant).

Appellant was the drilling contractor under the agreement in question. The contract called for the drilling of an oil well to a specified maximum depth for a specified total sum, payable partly in cash and partly in certificates of beneficial interest in a certain common law trust. Payments of cash were to be made in installments at specified intervals during the progress of the work and until the full sum of $120,000 in cash had been paid. The provision of the contract most pertinent to the instant action reads as follows: "It is expressly understood and agreed by and between the parties hereto, that in event of failure of Owner to make the cash payments and deliver the certificates of beneficial interest provided to be paid and delivered in Paragraph V of this contract, contractor may, at his option, suspend drilling operations until such time as the failure of owner is remedied, and such suspension of operations shall not be deemed to be a breach by contractor of this contract. It is further under-

stood and agreed that if by reason of such default contractor shall suspend drilling operations, owner agrees to pay contractor upon the termination of such suspension period, the sum of $288.00 per day as liquidated damages for the period of such suspension. In the event that owner fails to remedy his default within a period of 90 days, then in that event, any time after such period of 90 days contractor may, at his option, and without further notice to owner, deem the same to be a permanent and definite default and breach of contract and treat the same in accordance therewith, without further or any notice whatsoever to said owner. It is further agreed that the contractor at all times shall be the sole owner of the said machinery and drilling equipment, and nothing herein shall be construed to be a transfer of any portion of the interest and ownership of said contractor in and to said equipment and machinery, and said machinery and equipment shall be subject to removal by said contractor upon completion of said well or before as hereinbefore provided.'' Payments under the contract were not made and appellant availed itself of the above quoted terms and instituted the present action to recover damages sustained by reason of the alleged breach of the contract and for loss of profits as a result thereof.

At the trial appellant, in addition to the contract, set forth as an exhibit attached to the complaint, proposed to introduce evidence with reference to the knowledge by respondents of appellant's financial condition, and with reference to an alleged agreement that the provision above quoted would constitute a condition precedent to further performance by the contractor, which evidence consisted of oral conversations and agreements by and between the appellant and respondents not reduced to writing. Objection to appellant's offer of proof thereon was sustained, and an objection to appellant's offer to prove all the allegations of its complaint was likewise sustained. Appellant thereupon rested and the court subsequently granted respondents' separate motions for nonsuit. Appellant here takes exception to the rulings of the trial court upon its offers of proof.

The questions here raised by appellant which require consideration are: (a) Were the payments under the contract conditions precedent to further performance on the part of the contractor; and (b) may the contractor sue upon the contract or is he confined to a suit in *quantum meruit* for the

reasonable value of the work actually done by him? As may be seen hereinafter, the answer to the second question depends upon the answer to the first.

It is respondents' contention that under a contract of the nature of the one in question a contractor is limited to a suit for the reasonable value of the work actually done. Respondents base their contention upon the series of cases concerned with a suit for damages for breach of the contract for the construction of the Western Pacific Railroad from San Jose to Sacramento, which cases may for convenience be denominated the Cox cases (*Cox* v. *Western Pac. R. R. Co.*, 44 Cal. 18; 47 Cal. 87; *Cox* v. *McLaughlin,* 52 Cal. 590; 54 Cal. 605; 63 Cal. 196; 76 Cal. 60 [18 Pac. 100, 9 Am. St. Rep. 164]; 10 Pac. C. L. J. 263). It is true that these cases hold generally that mere failure to make installment payments under a construction contract does not prevent the contractor from continuing with the work and does not authorize him to abandon the contract and sue for all benefits he would have received upon full performance (*Cox* v. *McLaughlin,* 52 Cal. 590; 54 Cal. 605); but that he may recover in *quantum meruit* for the reasonable value of the work actually done. (*Cox* v. *McLaughlin,* 76 Cal. 60, *supra.*) However, it should be pointed out that certain situations are excepted from the rule laid down by the Cox cases, namely, those in which the contractor is prevented by the breach from further performance, or where the condition breached is expressly made precedent to further performance. In *Cox* v. *McLaughlin,* 54 Cal. 605, it is stated at page 606: "Where an entire contract is *terminated* by the employer against the will of the contractor, the latter is not confined to the actual value of the work done, but may prosecute his action for the breach of the agreement, and may recover as damages the profits he would have made had he been allowed to complete the work. The contract is thus terminated where the employer *prevents* or prohibits the completion of the work—the contractor being ready and willing to complete the work." (Italics included.) And in the same case, at page 609, it is said (quoting with approval from *Palm et al.* v. *Ohio & Mississippi Railroad Co.*, 18 Ill. 217): "'A contract, no doubt, may be so drawn as to make the payment of a part of the consideration, by installments as the work progresses, or at stated times independently of the progress of the work, a condition precedent to the fur-

ther prosecution of the work, and make its non-payment such a substantial violation of the contract as to authorize the other party to abandon the work and sue upon it, as for having been prevented from completing it by the act of the party who had thus failed to perform such condition precedent. But the law cannot infer such a consequence from the ordinary obligation to pay money at a particular time, or upon a completion of a specified part of the work.' "

Respondents, of course, contend that the instant contract provides for no more than the ordinary obligation to pay money in installments at a particular time and that the rule of the Cox cases applies. However, the quotations above set forth clearly indicate that if in the instant case the installment payments were by the terms of the contract made conditions precedent to further prosecution of the work by the contractor the rule stated in the Cox cases is not applicable, and, upon the authorities hereinafter cited, appellant would be entitled to the damages sought if his cause of action were proven.

It should be pointed out that the approved language quoted from the case of *Palm et al.* v. *Ohio & Mississippi Railroad Co., supra,* must be taken to mean that where continuance of work under a contract is made to depend upon payments due, failure to make such payments constitutes "prevention" of performance. In other words, where payment is a condition precedent to performance, breach of that condition in itself may be held to be a prevention of further performance and the contractor may sue for damages as if he had actually been prevented from continuing with the work. This is borne out by the language employed in *Fountain* v. *Semi-Tropic Land & Water Co.,* 99 Cal. 677 [34 Pac. 497], at pages 680, 681: "If one party to a contract refuses to perform a covenant which is a condition precedent or concurrent, with (*sic*) the consent of the other party, the first consideration is whether it is such a breach as will justify a rescission. If the covenant be of minor importance, not going to the root of the matter, and one that can be readily compensated in damages, the party injured cannot rescind, but must perform his part of the contract and seek compensation in damages. If, however, the breach be of a covenant, the non-performance of which will render it impossible for the other party to perform, *or will frustrate the whole purpose of the contract on his part,*

he still has two courses open to him, provided performance has not proceeded so far that it is impossible to place the opposite party pretty nearly in the position he was in before the contract was entered into. He may, acting promptly, rescind and recover moneys laid out and expended, or paid, and the value of labor performed and materials furnished under the contract; or he may decline to proceed in performance and sue for damages, in which case he may recover all loss occasioned by the breach—including profits he would have made if the contract had been performed; subject to the rule, of course, that remote and speculative damages cannot be recovered.'' (Italics added.) It is obvious that if performance is made to depend upon payment default in payment will frustrate the whole purpose of the contract.

To the theory of ''prevention'' of performance there should also be added that of repudiation or renunciation of the contract by the opposite party, entitling the contractor to sue upon the contract for damages as for an entire breach. (See *Hale* v. *Trout,* 35 Cal. 229.) ██ Both these theories were recognized in *Barris* v. *Atlas Rock Co.,* 118 Cal. App. 606 [5 Pac. (2d) 670], wherein it is said at page 610: ''The rule laid down in *Cox* v. *McLaughlin, supra,* is that, *in the absence of outright renunciation* (e. g., *Hale* v. *Trout, supra*), *or contractual language making further and continued performance conditional and dependent upon punctual payment,* mere nonpayment of an installment by one party, before the completion of the work, does not constitute prevention of further performance by the other; further, that such failure is a breach justifying an action upon a *quantum meruit* (for the reasonable value of the work actually done), but it does not give rise to a cause of action on the contract for damages.'' (Italics added.) In passing, it should be stated that the quotation last above given appears to state correctly the present existing rule in California as drawn from the Cox cases.

██ The language quoted from *Fountain* v. *Semi-Tropic L. & W. Co., supra,* calls attention to an additional factor for consideration in the case of a breach of an executory contract, namely, whether the breach is of a covenant going to the root of the matter, which in turn brings up the question of the nature of the contract under consideration, whether the terms thereof are entire or severable. In the instant case the contract is by its terms clearly entire and not severable, calling

as it does for the drilling of an oil well to a specified depth for a stated compensation.

The language of the Fountain case also indicates an inconsistency with respect to the rule of the Cox cases, since it is stated that where the covenant breached is of minor importance the party injured cannot rescind but must continue to perform his part of the contract, but if the breach be of a covenant, nonperformance of which will render further work impossible, or will frustrate the purpose of the contract, the injured party may elect either to rescind and sue in *quantum meruit* or decline further performance and sue for damages. But in the Cox cases it has been held that while mere failure to make an installment payment is not such a breach as to warrant an action upon the contract for damages it will nevertheless entitle the injured party to rescind and sue for the reasonable value of the services already performed. This appears to create an anomalous situation. Were it not for the holding in the Cox cases it might be said that if failure to make a payment under a contract was of sufficient importance to warrant abandonment of the contract and a suit in *quantum meruit*, by the same token the breach might be of sufficient import to warrant a suit for damages upon the contract. It has been held so in other jurisdictions, with respect to construction contracts. (See *Guerini Stone Co.* v. *P. J. Carlin Const. Co.*, 248 U. S. 334 [39 Sup. Ct. 102, 63 L. Ed. 275].) However, as will hereinafter appear, reconciliation of the apparent inconsistency is not necessary to a decision in the present case.

It is to be noted from the provisions of the contract hereinabove set out that if a default in an installment payment continued for 90 days the contractor was expressly authorized to consider such default a "permanent and definite" breach of the contract and to "treat the same in accordance therewith" without further notice. It is also to be noted that under the terms of the contract the contractor could already have suspended operations as soon as the owner failed to make the payment and that the drilling equipment and machinery was "subject to removal by said contractor upon completion of said well or before" as provided in the contract. Such terms plainly mean that in such event the contractor could abandon drilling operations and proceed as upon a material breach of the entire contract and, further, that continued

performance by the contractor depended upon payment of installments within 90 days of the due date. In short, such payment was expressly made a condition precedent to further work on the part of the contractor. Respondents argue that the provision in question was merely a recital of the ordinary legal consequences of a default in a progress payment, except that the contractor had agreed to postpone for 90 days its right to sue for the installment or to rescind for such a default and sue in *quantum meruit* for the work done. The argument overlooks the fact that by the terms here considered performance of the work and payment of installments were definitely related, continuation of the former was made to depend upon the latter and a default in payment was to be considered a permanent and definite breach and to be treated accordingly. Only one logical and reasonable construction may be given to such terms, namely, that further and continued performance was dependent upon punctual payment. The instant case is therefore not within the rule of the Cox cases as propounded in *Barris* v. *Atlas Rock Co., supra,* nor as originally set forth in *Cox* v. *McLaughlin, supra.*

Upon either theory above mentioned, that of "prevention" of performance or that of renunciation of the contract, the plain terms expressed in the written agreement entitled appellant to bring suit upon the contract for damages sustained through the breach, including loss of profits in the transaction. (*Hale* v. *Trout, supra; Fountain* v. *Semi-Tropic Land & Water Co., supra; McConnell* v. *Corona City Water Co.,* 149 Cal. 60 [85 Pac. 929, 8 L. R. A. (N. S.) 1171]; *Alderson* v. *Houston,* 154 Cal. 1, 3 [96 Pac. 884]; *Walsh* v. *Standart,* 174 Cal. 807 [164 Pac. 795]; *Woodruff Co.* v. *Exchange Realty Co.,* 21 Cal. App. 607 [132 Pac. 598]; *King Features, etc.,* v. *K M T R, etc.,* 29 Cal. App. (2d) 247 [84 Pac. (2d) 322].)

Care should be taken to distinguish cases like the present one, where the action is brought upon the contract, from those in which the plaintiff has elected to rescind the contract and sue in *quantum meruit* for the reasonable value of services rendered, as in *Porter* v. *Arrowhead Reservoir Co.,* 100 Cal. 500 [35 Pac. 146], *San Francisco Bridge Co.* v. *Dumbarton L. & I. Co.,* 119 Cal. 272 [51 Pac. 335], and *Carlson* v. *Sheehan,* 157 Cal. 692 [109 Pac. 29]. The relief granted depends upon the remedy elected, and the fact that the plaintiff's right to sue in *quantum meruit* was upheld in the cases last cited does

not mean that the plaintiff would not also have been entitled to recover damages in a suit upon the contract, had he elected to pursue such a remedy.

■ As may be seen above, the provisions of the contract here involved permit a reasonable interpretation thereof without resort to extrinsic evidence. The terms as expressed are clear in themselves and the court did not err in rejecting appellant's offer of parol evidence as an aid to interpretation. Nor did the court err in rejecting proof of any contemporary oral contract. The contract as written is clearly complete in itself and embodies the entire agreement of the parties. However, for the reasons above set forth, the court did commit prejudicial error in refusing to permit appellant to prove the contract itself and the liability of the respondents thereunder and in granting respondents' motions for nonsuit.

For the foregoing reasons the judgments of nonsuit are reversed.

York, P. J., and White, J., concurred.

Respondent Virgil Crum's petition for a hearing by the Supreme Court was denied May 29, 1941.