[Civ. No. 8231. Fourth Dist., Div. Two. Apr. 20, 1967.]

INTEGRATED, INC., Plaintiff and Respondent, v. ALEC FERGUSSON ELECTRICAL CONTRACTOR, Defendant and Appellant.

[Civ. No. 8232. Fourth Dist., Div. Two. Apr. 20, 1967.]

ALEC FERGUSSON ELECTRICAL CONTRACTOR, Plaintiff and Appellant, v. INTEGRATED, INC., et al., Defendants and Respondents.

(Consolidated Cases.)

*Assigned by the Chairman of the Judicial Council.

288

Coombs & Friel and Hugh D. Friel for Defendant and Appellant in No. 8231 and Plaintiff and Appellant in No. 8232.

James A. Poore for Plaintiff and Respondent in No. 8231 and Defendants and Respondents in No. 8232.

TAMURA, J.—Integrated, Inc., general contractor for the construction of a state plant quarantine station at Yermo, California, subcontracted the electrical work to Alec Fergusson Electrical Contractor. Following commencement of construction a dispute arose over performance and progress payments. Fergusson gave written notice of rescission and refused to proceed unless Integrated agreed to certain terms and conditions. Thereupon Integrated resubcontracted the

uncompleted work and sued Fergusson for damages for breach of contract. Fergusson originally filed a cross-complaint but subsequently dismissed the cross-complaint and filed a cross action against Integrated for breach of contract naming as defendants, in addition to Integrated, the Department of Public Works which held funds under a stop notice filed by Fergusson and Firemans Fund Insurance Company, the surety on Integrated's labor and material bond. The cases were consolidated and tried by the court. In Integrated's action judgment was entered awarding it damages against Fergusson in the sum of $7,558.28, and in the cross action judgment was entered that Ferguson take nothing and that the Department of Public Works be authorized to release to Integrated funds withheld under the stop notice. Fergusson appeals from both judgments. Upon stipulation of the parties, the appeals were ordered consolidated for hearing and disposition.

The evidence may be summarized as follows: Integrated subcontracted the electrical work to Fergusson on January 28, 1963, for a fixed price of $15,840. Construction commenced in early March 1963. Fergusson had men on the job varying in numbers from one to three until June 11 on which date it withdrew its men. By that date 35 to 40 percent of the electrical work had been completed. On June 15, Fergusson's attorney notified Integrated by letter that Fergusson was rescinding the contract because Integrated (1) failed to make progress payments as required by the contract and (2) had caused delays by failing to coordinate the work of the subcontractors. The letter further informed Integrated that Fergusson would return to work only under a new contract which would provide that Integrated (1) deposit in escrow the entire contract price plus 10 percent for extras, (2) keep electrical work areas open and accessible, (3) hold Fergusson harmless for increased costs occasioned by future delays and (4) compensate Fergusson for additional ''move in and move out expenses.'' An invoice for $9,136.29 purporting to be the ''fair value of work done to date'' accompanied the letter. Integrated rejected the conditions and ordered Fergusson to resume performance. Fergusson refused and filed a stop notice with the Department of Public Works, claiming $5,556.37 for labor and materials furnished, and filed a claim in that amount with Firemans Fund Insurance Company.

Upon Fergusson's refusal to resume performance, Integrated entered into a cost-plus contract with F R B Electrical

Corporation for completion of the work.[1] F R B used materials which Fergusson had purchased but had not installed, Integrated paying an invoice therefor in the amount of $3,579.92, purchased additional materials and completed the job at a total cost to Integrated of $28,985.

On the issue of delays in the prosecution of the work, the evidence was conflicting. Fergusson testified that there were frequent delays because the plumbing contractor was tardy and, in addition, that electricians were hindered by threats of the masonry subcontractor to cover the area where electrical work was to be done. On the other hand, Integrated introduced testimony that prior to the attempted rescission there was frequently work to be done by electricians which was not done. It was generally agreed that the job did suffer delays which were caused primarily by the plumbing subcontractor.

With respect to progress payments the reverse side of the preprinted form of the subcontract provided:

"2. The General Contractor will allow Subcontractor progress payments only at the interval, in the ratio, and to the extent such payments are made to the General Contractor by the Owner. All requests for progress payments must be delivered to the General Contractor on or before the first day of the month for processing payments due on the following fifteenth."

A typewritten provision on the face of the contract, however, provided: "Payments to be made in installments of 90% of the work performed during the previous month and to be made immediately following payment to the General Contractor. Balance within forty-five (45) days after notice of completion and acceptance of the work by the Owner and General Contractor."

There was evidence that prior to June 11 Fergusson had made oral demands for payment to Integrated's superintendent on the job. In addition, Fergusson submitted an invoice dated April 26, 1963, for $3,168, which invoice was received by Integrated on May 2.

Mr. Butler, president of Integrated, testified that on a state contract it was not the practice of contractors to bill the state for progress payments. He stated the state makes an inspec-

---

[1]Fifty-one percent of the stock of F R B was owned by Mr. Butler, president of Integrated.

tion on the jobsite to determine the extent of completion and makes progress payments accordingly, transmitting with the check a "payment schedule" showing the allocation of payment to the various jobs involved.

Integrated received its first payment from the state on May 3 of which $1,497 was allowed for electrical work and by June 6 it had received $2,993 allocable to electrical work. Integrated's accountant assumed the preprinted provision of the contract relating to progress payments to be controlling and, therefore, recorded the invoice received on May 2 at the end of May for payment June 15 following. Some time during the second week of June, Integrated's superintendent informed Mr. Butler that Fergusson was threatening to withdraw from the job whereupon Butler directed payment of $1,000 and a check in that amount was mailed to Fergusson on June 14. Before the check was received by Fergusson, Integrated stopped payment because it had by then received the letter of rescission.

Integrated's accountant gave as an additional reason for withholding payment noncompliance by Fergusson with contract provisions requiring subcontractors to file certificates of insurance and "submittals," the latter being plans and working drawings of articles installed by the subcontractor and material lists. Although representatives of Integrated testified that the certificates of insurance had not been received, a secretary of an insurance agency testified that Fergusson was covered and that the certificates had been mailed to Integrated. With respect to the "submittals," the evidence discloses that there was substantial compliance by Fergusson.

In the action filed by Integrated, the court made general findings by reference to the pleadings and concluded that Integrated had "performed all of the terms and conditions of the agreement," and that Fergusson, without legal or just cause, had refused to perform. Integrated had claimed $13,114.65 as damages, that amount being the approximate difference between its total cost to complete the work and the contract price with Fergusson. The court, however, by crediting Fergusson with the value of labor and material furnished before it withdrew ($5,556.37), found that Integrated had been damaged in the sum of $7,558.28 and entered judgment accordingly.

In the cross action by Fergusson, the court found untrue

allegations that Integrated failed to make progress payments as required by the contract and failed to coordinate the work of the subcontractors thereby preventing performance by Fergusson. The court concluded that Fergusson was not entitled to rescind, but was itself in breach of nonperformance. It was ordered that Fergusson take nothing and that the Department of Public Works be authorized to pay Integrated amounts withheld under the stop notice.

Fergusson attacks the sufficiency of the findings and complains of the court's failure to make requested special findings relating to the issue of alleged failure to make progress payments. Its underlying contention, however, is that the finding and conclusion that it was not entitled to rescind were erroneous. It contends that the uncontradicted evidence shows that Integrated breached the contract by failing to make progress payments immediately upon its receipt of payment from the state and further that the finding that Integrated did not prevent performance by Fergusson by failing to coordinate the work of the subcontractors was not supported by substantial, competent evidence.

On the issue of progress payments, the court made a general finding that Integrated was not in default, thus implying that there was nothing due under the contract prior to the attempted rescission of June 15. That this was the court's reasoning is disclosed by its memorandum opinion wherein the court expressed the view that the only valid reason which would have justified rescission would have been the delay in making progress payments, which in turn depended upon the proper interpretation of the contract.[2] In the court's view the printed and typewritten provisions of the contract were not inconsistent. It, therefore, concluded that no progress payment was due until June 15. Fergusson contends that the court's construction of the agreement was erroneous.

The interpretation of a written instrument is solely a judicial function unless it turns upon credibility of extrinsic evidence. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) An appellate court is not bound by a trial court's construction of a written

---

[2]Although a trial court's memorandum opinion may not be used to impeach the court's decision, reference may be made to it to determine the process by which the court reached its decision. (*Arvin-Kern Co.* v. *B. J. Service, Inc.,* 178 Cal.App.2d 783, 785 [3 Cal.Rptr. 238]; *Winegar* v. *Gray,* 204 Cal.App.2d 303, 304 [22 Cal.Rptr. 301]; *Steiner Lumber Co.* v. *Sapp,* 216 Cal.App.2d 800-801 [31 Cal.Rptr. 276, 32 Cal.Rptr. 395].)

instrument where such construction is based solely on the instrument without extrinsic evidence, or where there is no conflict in the extrinsic evidence, or where a determination has been made on incompetent evidence. (*Parsons* v. *Bristol Development Co., supra,* at page 865; *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257].) ■ The fact that conflicting inferences may be drawn from uncontradicted extrinsic evidence does not make the construction of the instrument a question of fact. (*Parsons* v. *Bristol Development Co., supra,* at page 866, fn. 2.)

In the instant case there was no extrinsic evidence concerning the meaning or purpose of the typewritten provision. There was some evidence that the general practice in the trade was to require subcontractors to file invoices on or before the first of the month for payments due the 15th following. There was no evidence, however, that such was the trade practice in situations where contracts contained provisions similar to the typed provision in question. There was no evidence respecting the circumstances under which the typewritten provision was entered or any discussions, if any, of the parties incident thereto. Such evidence could, of course, have been properly considered in the construction of the instrument. (Code Civ. Proc., § 1860.) We are thus left solely with the language employed.

■ It is an accepted rule of contract interpretation that where provisions are inconsistent, written or typewritten provisions prevail over printed portions which have been composed without reference to particular parties or contract. (Civ. Code, § 1651; Code Civ. Proc., § 1862; *Burns* v. *Peters,* 5 Cal.2d 619, 623 [55 P.2d 1182]; *Gollaher* v. *Midwood Constr. Co.,* 194 Cal.App.2d 640, 648 [15 Cal.Rptr. 292]; *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 431 [296 P.2d 801, 57 A.L.R.2d 914]; *McNeely* v. *Claremont Management Co.,* 210 Cal.App.2d 749 [27 Cal.Rptr. 87].)

■ In our opinion the typewritten provision requiring payment "immediately following payment to the general contractor" is inconsistent with the preprinted provision providing for payment on the 15th following the submission of invoices if such invoices are filed on or before the 1st. The contention urged by Integrated would render superfluous the phrase "immediately following payment to the general contractor."

The undisputed evidence is that although an invoice dated

April 26 was received by Integrated on May 2 and Integrated did receive payments from the state on May 3 and again in June prior to the 6th, no payment had been made to Fergusson prior to June 15. The evidence further discloses that Fergusson commenced work during the latter part of March and by June 11 had completed 35 to 40 percent of the electrical work.

In the light of the evidence and our interpretation of the contract, it is necessary that the judgments be reversed. The interpretation placed on the contract by the trial court did not require it to consider whether Integrated breached the agreement by failing to make progress payments "immediately" upon receipt of payment from the state or whether, if such breach did occur, it was of sufficient materiality to justify recission or abandonment of the contract by Fergusson. On a retrial those issues must be considered and appropriate findings made thereon.

For the guidance of the court on retrial and in order to avoid subsequent appeals, we believe it is necessary for us to express our views on certain legal issues raised on this appeal which may arise on a retrial.

█ Whether Integrated failed to make progress payments in accordance with the agreement as we construe it, would turn upon the meaning of the word "immediately." Although strictly speaking it means not deferred by any period of time, the word is usually construed to mean within a reasonable time having due regard to the nature and circumstances of the case. (*Feeley* v. *Boyd,* 143 Cal. 282 [76 P. 1029, 65 A.L.R. 943] ; *Bailey Trading Co.* v. *Levy,* 72 Cal.App. 339, 346-347 [237 P. 408].) As used in the context of the agreement in question, it must necessarily allow such reasonable time as may be necessary to process payment. █ What is a reasonable time for such purpose is a question of fact to be determined by the trier of fact. (*Bacigalupi* v. *Phoenix Bldg. etc. Co.,* 14 Cal.App. 632, 640-641 [112 P. 892].)

Should it be found that Integrated failed to make payment "immediately" as required by the contract and thereby committed a breach, it will be necessary to determine whether such breach entitled Fergusson to rescind.

█ Ordinarily a party may unilaterally rescind a contract only where there has been a total or material breach by the other party. (*Crofoot Lumber, Inc.,* v. *Thompson,* 163 Cal. App.2d 324, 332-333 [329 P.2d 302] ; *Fountain* v. *Semi-Tropic Land & Water Co.,* 99 Cal. 677 [34 P. 497] ; *Wells Benz, Inc.,*

v. *United States,* 333 F.2d 89, 92-93; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 264; 5 Corbin, Contracts, § 1104; Rest., Contracts, § 274.) The rule was succinctly stated in the early case of *Fountain* v. *Semi-Tropic Land & Water Co., supra,* at 680, as follows:

"If one party to a contract refuses to perform a covenant 'which is a condition precedent or concurrent, with [sic] the 'consent of the other party, the first consideration is whether it 'is such a breach as will justify a rescission. If the covenant be 'of minor importance, not going to the root of the matter, and one that can be readily compensated in damages, the party injured cannot rescind, but must perform his part of the con- 'tract and seek compensation in damages.''

 Fergusson contends, however, that in building con- tracts failure to make progress payments in accordance with the terms of the contract gives the contractor the right to rescind and sue for the reasonable value of labor and mate- rials furnished. The proposition that in building contracts failure to make progress payment is not such a breach as will authorize a contractor to abandon the work and sue for dam- 'ages, but that it does constitute such a breach as will justify rescission and recovery of the reasonable value of labor and materials furnished, was first announced in this state in *Cox* v. *McLaughlin,* 52 Cal. 590; 54 Cal. 605; 63 Cal. 196; 76 Cal. 60 [18 P. 100, 9 Am.St.Rep. 164], and has thereafter been repeatedly stated to be the settled law of this state. (*Ameri- can-Hawaiian Eng. etc. Co.* v. *Butler,* 165 Cal. 497, 516 [133 P. 280]; *San Francisco Bridge Co.* v. *Dumbarton Land & Improv. Co.,* 119 Cal. 272 [51 P. 335]; *Fairchild etc. Co.* v. *Southern etc. Co.,* 158 Cal. 264, 273-274 [110 P. 951]; *Porter* v. *Arrowhead Reservoir Co.,* 100 Cal. '500, 502 [35 P. 146]; *Golden Gate Lbr. Co.* v. *Sahrbacher,* 105 Cal. 114 [38 P. 635]; *Barris* v. *Atlas Rock Co.,* 118 Cal.App. 606 [5 P.2d 670]; *Monson* v. *Fischer,* 118 Cal.App. 503 [5 P.2d 628]. See *Big Boy D. Corp., Ltd.* v. *Etheridge,* 44 Cal. App.2d 114, 119 [111 P.2d 953]; *Smoll* v. *Webb,* 55 Cal.App. 2d 456, 458 [130 P.2d 773].) It has been observed that the proposition as stated leads to the anomalous situation that failure to make progress payments is deemed to be of suffi- 'cient materiality to justify abandonment or rescission and recovery on *quantum meruit,* but not such a total breach as would entitle the contractor to sue for damages. (*Big Boy D. Corp., Ltd.* v. *Etheridge, supra,* at page 120.) In the instant

case, as in *Big Boy D. Corp., Ltd.* v. *Etheridge, supra,* however we need not pass on Fergusson's right to damages because it concedes it is seeking to recover only the reasonable value of labor and materials furnished. Although damages are claimed in its complaint, in its briefs on appeal, Fergusson expressly disclaims any right to recover for loss of profits.

The mechanical application of the rule as phrased in the cases heretofore cited would lead one to the conclusion that any failure to make progress payments would entitle the contractor to rescind. A careful examination of the facts in those cases in which the rule has been applied reveals, however, that the failures to make progress payments which were held to justify rescission involved either an extended and unreasonable delay, imposition of new and onerous conditions to payment, outright refusal, or a total repudiation of the contract. They did not involve a minor deviation from the covenant. Significantly in *Porter* v. *Arrowhead Reservoir Co., supra,* 100 Cal. 500, the court discussed the holdings in the *Cox* cases and concluded at p. 504: "From the foregoing views it follows that, to entitle the plaintiffs [contractors] to recover in the present action, it is only necessary that they prove a *substantial failure* upon the part of the defendant to comply with its agreement as to the payment of an installment upon the contract price, and in addition thereto that they rescinded the contract by reason of such failure; . . . ." (Italics added.) In stating the rule, subsequent cases have omitted the word "substantial" and merely state generally that failure to make progress payments entitles a contractor to rescind. In our opinion *Porter* v. *Arrowhead Reservoir Co., supra,* expresses a more precise statement of the rule. (*Guerini Stone Co.* v. *P. J. Carlin Constr. Co.,* 248 U.S. 344, 344-345, [63 L.Ed. 275, 285, 39 S.Ct. 102, 106] ; *United States* v. *Southern Constr. Co.,* 293 F.2d 493, 498, reversed in part on other grounds, 371 U.S. 57 [9 L.Ed.2d 31, 83 S.Ct. 108].) A slight deviation either in time or amount of progress payments should not justify rescission or abandonment. (See *United States* v. *Southern Constr. Co., supra.*)

In the instant case, therefore, if the court should find that Integrated failed to make progress payments within the time required by the contract, the court must determine whether such failure constituted a substantial failure to comply. That is a question of fact to be determined by the trial court. (*Associated Lathing etc. Co.* v. *Louis C. Dunn, Inc.,* 135 Cal.

App.2d 40, 49 [286 P.2d 825]; *Smith* v. *Empire Sanitary Dist.*, 127 Cal.App.2d 63, 73 [273 P.2d 37].)

If Integrated's breach be found to be substantial, the court must also determine whether Fergusson was itself in default in any material respect. One who is himself in default in the performance of a dependent or concurrent obligation or where his default is so related to the obligation in which the other has failed that it affects the performance thereof or the duty of the other to perform may not unilaterally rescind because of the other's breach. (*Fairchild etc. Co.* v. *Southern etc. Co., supra*, 158 Cal. 264, 273; *Nelson* v. *Spence*, 182 Cal.App.2d 493, 499 [6 Cal.Rptr. 312]; *American-Hawaiian Eng. etc. Co.* v. *Butler, supra*, 165 Cal. 497, 516; *Eade* v. *Reich*, 120 Cal.App. 32, 38 [7 P.2d 1043].) Where, however, the delinquency of the rescinding party has no relation to the other's obligation in respect of which the right of rescission is asserted, it will not preclude rescission. (*American-Hawaiian Eng. etc. Co.* v. *Butler, supra*; *Eade* v. *Reich, supra*.)

Since we have determined that the judgments must be reversed for the reasons stated, it is unnecessary to consider the remaining contentions urged by Fergusson.

The judgments are reversed.

McCabe, P. J., and Kerrigan, J., concurred.