UNITED STATES of America for the Use of BUILDING RENTALS CORP., d/b/a Dick Fritz Painting, Appellant and Cross-Appellee, (Plaintiff below)

v.

The WESTERN CASUALTY AND SURETY COMPANY, et al., Appellees and Cross-Appellants.

COMMERCIAL LATHING COMPANY, d/b/a Pacific Plastering Corporation, a California corporation, Appellant, (Cross-Claimant below)

v.

BUILDING RENTALS CORPORATION, a corporation, d/b/a Dick Fritz Painting: Dick Fritz, Appellees, (Cross-Defendants below).

Nos. 73–1004, 73–1005.

United States Court of Appeals, Ninth Circuit.

June 4, 1974.

C. E. Millikan, Jr. (argued), of Milli-kan, Montgomery & Olafson, Pasadena, Cal., for appellant and cross appellee.

James B. Merzon (argued), of Ogle & Gallo, Morro Bay, Cal., Fitzgerald, Ab-bott & Beardsley, Oakland, Cal., Fuller-ton, Lang & Richert, Fresno, Cal., for appellees and cross appellants.

Before ELY and WRIGHT, Circuit Judges, and McGOVERN,* District Judge.

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

This case originated as a claim under the Miller Act by a sub-subcontractor against the subcontractor and its sureties.[1] Plaintiff appeals and defend-ants cross-appeal from a district court judgment awarding plaintiff $9,467.79 as the balance of the reasonable value of labor and material furnished by plain-tiff on a construction job. We are con-cerned on appeal with two main issues: (1) whether the district court properly determined the amount of restitution due plaintiff upon rescission of the con-tract; (2) whether the district court's finding that defendants' conduct justi-fied rescission of the contract by plain-tiff was clearly erroneous. We remand the case to the district court for further proceedings.

## I.

## BACKGROUND

The United States contracted with Montgomery Ross Fisher, Inc., not a party here, to build a 440-bed hospital at Fort Ord, California. Fisher entered into a subcontract with defendant Pacific Plastering, whereby Pacific agreed to in-stall gypsum wallboard, metal studs, and plaster for $800,000. Pacific in turn sub-subcontracted the wallboard portion of the work to plaintiff Fritz Painting for $116,000. The latter contract did not require Fritz to furnish a bond.

The payment provision of the Pacif-ic-Fritz sub-subcontract is crucial to this case. It required Pacific to make monthly payments to Fritz according to the percent of the total wallboard work completed. It further provided that Pa-cific would retain 10% of each progress installment until the job was completed. Pacific was required to make its prog-ress payments within 10 days after it was paid by the prime contractor, Fish-er.

Fritz's material supplier for the job was Central Supply Co. Central Supply met with Pacific and Fritz and agreed to supply materials to Fritz provided that Pacific pay Fritz's account to Cen-tral Supply out of progress payments earned by Fritz. Central Supply gave a 5% discount for payment within 30 days of billing.

---

* Of the Western District of Washington.

1. 40 U.S.C. §§ 270a and 270b.

Fritz began work on January 29, 1970, and, on February 12, submitted a bill to Pacific for $10,440, reflecting its anticipated progress for February less the 10% to be retained by Pacific. Pacific paid Fritz's Central Supply bill of $3,271.29 (discounted 5% for prompt payment) and the balance, $7,168.67, to Fritz, all with Fritz's consent.

In mid-March Fritz billed Pacific for $11,484, based on its anticipated progress for that month. During March, however, Fritz charged $13,002.63 worth of materials at Central Supply, and Pacific paid the entire Central Supply bill on May 6. Because this exceeded the amount actually due Fritz by $1,518.63,[2] Pacific credited the overpayment against Fritz's April progress payment.[3]

As of May 6, Pacific had made progress payments to Fritz for the estimated completion of 21% of the job during February and March. Fritz submitted a bill in April anticipating that it would complete an additional 9% that month. Its anticipated April progress entitled it, the district court found, to $7,877.37. According to the contract, Pacific was required to pay this amount by May 28, 10 days after it was paid by the prime contractor, first paying Fritz's debt to Central, and the balance to Fritz.

At this point the facts become disputed. The district court found that, prior to the payment due date of May 28, Fritz demanded that Pacific pay it the entire April draw, rather than part to Central Supply. The district court found that "on account of [Fritz's] demand and at its request," Pacific delayed payment of Fritz's Central Supply bill until after the first part of June. Pacific postponed the payment, according to the court, in order to allow Fritz to demonstrate that it was financially strong enough to justify Pacific's direct payment of the April draw to Fritz without jeopardizing payment of Fritz's Central Supply account.

Fritz furnished two financial statements, one at the end of May and another on June 8, but was unable to demonstrate sufficient financial strength, and Pacific refused to pay it directly the April draw. On June 12 Fritz ordered its employees to cease work, giving nonpayment as the reason. The court found that Fritz intended to resume work upon payment for the April progress.

On June 15 Pacific sent $14,144.47 to Central Supply on account of purchases by Fritz of approximately $7,000 during both April and May, this without Fritz's consent. Had Pacific paid Fritz's April Central Supply bill by the end of May, there would have been a discount of $356.56. Central Supply allowed none for the April materials because of the late payment.

Pacific completed Fritz's portion of the job after Fritz stopped working. The prime contractor is withholding $118,000 of the $800,000 due Pacific pending the outcome of this litigation.

The district court concluded that Pacific breached its contract with Fritz in a substantial and material way. The contract obligated Pacific to pay $7,877.37 by May 28, of which $6,773.31 would go to Central Supply (April purchases of $7,129.87 minus 5% discount of $356.56) and the balance, $1,104.06, directly to Fritz. The court concluded that Pacific's failure to pay entitled Fritz to rescind.

## II.

### THE AMOUNT OF RESTITUTION

■ The court having determined that Fritz was justified in regarding the contract as terminated, Fritz became entitled to the reasonable value of all labor and materials that Pacific received in performance of the contract. United States for the use of Coastal Steel Erectors, Inc. v. Algernon Blair, Inc., 479 F.

2. The district court incorrectly stated that the overpayment equalled $1,318.63.

3. Fritz now claims that Pacific should not have paid the entire Central Supply bill be-cause approximately $3,500 of it represented materials purchased for another job. Fritz made no objection to the payment, however.

2d 638, 640 (4th Cir. 1973); Seaboard Surety Co. v. United States, 355 F.2d 139, 144–145 (9th Cir. 1966); Integrated, Inc. v. Alec Fergusson Electrical Contractors, 250 Cal.App.2d 287, 58 Cal. Rptr. 503, 509 (4th Dist. 1967); 5 Corbin on Contracts § 1109, at 582 and § 1112, at 596 (1964).[4]

■ Unlike damages, the normal remedy for breach of contract which tries to put the injured party in the position he would have been in had the contract been performed, the remedy of restitution is used to put him in as good a position as he held before the contract was made. 5 Corbin on Contracts, *supra* at 598. The contract price, while evidence of reasonable value, is neither the final determinant of the value of performance nor does it limit recovery. United States v. Algernon Blair, Inc., *supra* at 641; Scaduto v. Orlando, 381 F.2d 587, 595–596 (2d Cir. 1967); Oliver v. Campbell, 43 Cal.2d 298, 273 P.2d 15, 18–19 (1954). 5 Corbin on Contracts § 1112, 596–597 (1964). Rather, as the Fourth Circuit recently stated, "the standard for measuring the reasonable value of the services rendered is the amount for which such services could have been purchased from one in the plaintiff's position at the time and place the services were rendered." United States v. Algernon Blair, Inc., *supra* at 641; Central Steel Erection Co. v. Will, 304 F.2d 548, 555 (9th Cir. 1955); United States for the use of F. E. Robinson Co. of N. C., Inc. v. Alpha-Continental, 273 F.Supp. 758, 777 (E.D. N.C.), aff'd per curiam, 404 F.2d 343 (7th Cir. 1968), cert. denied 395 U.S. 922, 89 S.Ct. 1774, 23 L.Ed.2d 239 (1969).

In our case, the district court correctly concluded that Fritz was entitled to the reasonable value of labor furnished and materials supplied. It found that Fritz had completed 40% of the contract before stopping work. Then, using the contract as "important evidence of the value" of Fritz's performance, the court awarded Fritz judgment for $9,467.79. This sum represents the contract price ($116,000), multiplied by the percentage of completion (40%), plus lost Central Supply discounts ($654.89 for April and June), less amounts already paid to Fritz and Central Supply ($37,587.10).

■ We find that this sum clearly does not represent the reasonable value of the labor and materials supplied by

4. Though not raised by the parties, there is some question whether federal substantive law controls over state law in Miller Act cases. This circuit has held that state law controls, at least as to subcontracts to which the United States is not a party. American Surety Co. v. United States for the use of B & B Drilling Co., 368 F.2d 475, 478 (9th Cir. 1966); United States for the use of J. W. Briggs v. Grubb, 358 F.2d 508, 515 (9th Cir. 1966); Wells Benz, Inc. v. United States for the use of Mercury Electric Co., 333 F.2d 89, 92 n. 3 (9th Cir. 1964); Central Steel Erection Co. v. Will, 304 F.2d 548, 554 (9th Cir. 1962); Continental Casualty Co. v. Schaefer, 173 F.2d·5, 7 (9th Cir.), cert. denied, 337 U.S. 940, 69 S.Ct. 1517, 93 L.Ed. 1745 (1949); *see* Leo Spear Construction Co., Inc. v. Fidelity and Casualty Co., 446 F.2d 439, 443 n. 1 (2d Cir. 1971); United States for the use and benefit of Shields, Inc. v. Citizens and Southern National Bank, 367 F.2d 473, 477 (4th Cir. 1966). Where provisions of the prime contract are at issue, however, federal law controls. Sam Macri & Sons, Inc. v. United States for the use of Oaks Construction Co., 313 F.2d 119, 124 n. 1 (9th Cir. 1963); *see* Peter Kiewit Sons' Co. v. Summit Construction Co., 422 F.2d 242, 260 (8th Cir. 1969). Other circuits have held, however, that federal law controls in all actions under the Miller Act. United States for the use of Coastal Steel Erectors, Inc. v. Algernon Blair, Inc., 479 F.2d 638, 640 n. 2 (4th Cir. 1973); United States for the use of Astro Cleaning & Packaging Corp. v. Jamison Co., Inc., 425 F.2d 1281, 1282 n. 1 (6th Cir. 1970); United States Fidelity and Guaranty Co. v. Hendry Corp., 391 F.2d 13, 18 (5th Cir. 1968). Interstices in federal law may be filled by incorporating state law, though. United States for the use of Astro Cleaning & Packaging Corp. v. Jamison Co., *supra* at 1282 n. 1.

We do not expressly distinguish between federal and state law in this opinion because we think that the principles we apply are valid both under federal and California law. *See* Sam Macri & Sons, Inc. v. United States for the use of Oaks Construction Co., 313 F.2d 119, 124 n. 1 (9th Cir. 1963).

Fritz, and we therefore remand for reconsideration.

Although Fritz contends that it completed more than 40% of the contract, there is evidence in the record to support the court's finding of that figure. It appears that Fritz installed more than 40% of the total wallboard, but most of the difficult, time-consuming work (such as putting wallboard around pipes, etc.) was not completed when it stopped work. Therefore, in terms of labor, Fritz may well have completed only 40% of the contract.

The 40% figure bears no relation, however, to the total amount of materials supplied. Indeed, Fritz contends that it supplied more than 70% of the total gypsum board installed, including over 42,000 square feet of board left at the jobsite and later used by Pacific when completing Fritz's portion of the work.

It does not appear that the district court's finding of 40% even purports to include an estimate of the reasonable value of these materials. We must therefore remand to the district court for independent findings on the reasonable value of both labor and the materials. As indicated above, the court should determine reasonable value by assessing the amount for which the labor and materials could have been purchased from one in Fritz's position at the time and place the services were rendered.[5]

## III.

## WAS RESCISSION JUSTIFIED?

Pacific contends on cross-appeal that it did not breach the contract and, in any event, any breach it may hve committed was not so substantial and material as to justify Fritz's rescission and the remedy of restitution.

Restitution is an available remedy for breach of contract only when the breach is of such vital importance and so material that it is held to go to the "essence" of the contract. 5 Corbin on Contracts § 1104, at 562 (1964). Failure to make progress payments can justify rescission and restitution. Integrated, Inc. v. Alec Fergusson Electrical Contractors, 250 Cal.App.2d 287, 58 Cal.Rptr. 503, 509 (4th Dist. 1967). However, "[a] slight deviation either in time or amount of progress payments should not justify rescission or abandonment." *Id.* at 510. Rather, rescission is justified where there is either "an extended and unreasonable delay, imposition of new and onerous conditions to payment, outright refusal, or a total repudiation of the contract." *Id.*

The district court found that Pacific's failure to make the April progress payment within the time or in the amount required by the contract was substantial and material, justifying Fritz's rescission of the contract. But the court found also that Pacific delayed the April payment "[o]n account of [Fritz's] demand and at its request. . . ."

This latter finding, taken at face value, seems inconsistent with the former. If Fritz did "demand" that Pacific delay payment beyond the time provided in the contract, and if Pacific delayed payment "on account of" this demand, then it would seem that there was, effectively, a modification or waiver of the right to prompt payment.

. . . Waiver may be found where in the course of dealing, one

---

5. It may be that the contract price is severable into specific amounts for labor and for materials. If so, the court could determine that the reasonable value of labor and materials provided by Fritz is represented by two different percentages of these amounts. We intimate no opinion on this. The court's ultimate concern, however, should be the determination of the reasonable value of the labor and materials, perhaps evidenced by the contract, not the determination of the percentage of contract completed.

party has dispensed with certain conditions in its favor and the other party has acted without meeting those conditions on the theory that their performance is not required.

United States for the use of F. E. Robinson Co. of N. C., Inc. v. Alpha-Continental, 273 F.Supp. 758, 778 (E.D.N.C. 1967), aff'd per curiam, 404 F.2d 343 (4th Cir. 1968), cert. denied, 395 U.S. 922, 89 S.Ct. 1774, 23 L.Ed.2d 239 (1969); *see* 5 Corbin on Contracts § 1104 at 565 (1964). At the very least, Pacific's delay in paying, if in fact demanded by Fritz, would not appear to be so unreasonable and material as to justify rescission of the contract and restitution to Fritz.

Because the court's findings on this issue appear to us to be inconsistent, we remand for clarification. It may be that the court's choice of words was inadvertent. Or possibly Pacific did breach the contract in a material way, but did so after the time constituting the delay "demanded" by Fritz had expired. *See* Seaboard Surety Co. v. United States, 355 F.2d 139, 144–145 (9th Cir. 1966). Whatever the case, we are unable to reach a reasoned decision on the record before us.

On remand, the court should clarify whether or not Fritz did in some sense waive the right to timely payment. If the court again concludes that Pacific did breach the contract, it should consider whether the breach was material and substantial, and should articulate the reasons for its conclusion. On remand, Pacific may raise the other arguments made to us challenging the district court's finding of material and substantial breach. Should the court be persuaded to adopt Pacific's position, it should consider Pacific's contention that Fritz in fact breached the contract and, if necessary, it should award appropriate relief.

The case is remanded for further proceedings consistent with this opinion.